CHICAGO, BURLINGTON & QUINCY RAILROAD COMPANY

v.

WILLIAM A. MAHARA.

*Railroads—Negligence—Personal Injuries—Improper Platform—Contributory Negligence.*

1. To build a depot platform in such manner between tracks as to compel a passenger to stand dangerously near a train is negligence, for which a company is liable in case of injury; but where such platform is of sufficient width to afford plenty of room for safety, it is not negligence to so build it that the nearest edge to the track could not be occupied in safety as a standing place while a train is passing.

2. Ordinary prudence requires that a person standing on such platform, waiting for a train, should give reasonable attention to his surroundings. He can not recover where he becomes so abstracted in thought as to be oblivious to his surroundings and is thereby injured.

[Opinion filed May 25, 1893.]

APPEAL from the Circuit Court of Bureau County; the Hon. GEORGE W. STIPP, Judge, presiding.

Messrs. O. F. PRICE and OWEN G. LOVEJOY, for appellant.

Mr. EDWARD R. WOODLE, for appellee.

Mr. JUSTICE CARTWRIGHT. Appellee brought this suit against appellant to recover damages on account of personal injuries sustained when about to take a train as a passenger from Princeton to Kewanee, and obtained a verdict and judgment thereon for $10,000.

It was charged that defendant was guilty of negligence in improperly constructing the passenger platform at Princeton, in not lighting the same at night and in running its passenger train into the station grounds at a high rate of

speed, without proper warning of its approach, whereby plaintiff, while exercising proper care on his part, was struck by the train and injured.

The evidence at the trial was that there were double tracks north of the depot at Princeton, the one next the station for east-bound trains, and the one farther north for west-bound trains. There was a platform extending from the depot to near the south track and there was another platform, eight feet wide, on the north side of the north track for business connected with west-bound trains and for the use of the passengers who wished to take such trains. The platforms were nearly level with the tops of the rails, being two inches above them, and they were connected with each other by two plank crossings level with the tops of the rails, one crossing at the east end of the depot and the other fifty-two feet west and opposite the ladies' waiting room. Plaintiff was advance agent of an operatic company, and in the prosecution of that business was about to take the train from Princeton to Kewanee and this was a west-bound train. It was about two o'clock at night and there was starlight but no moon. There was a little snow on the ground and the night was fairly dark, but objects could be distinguished. There was a light in the depot which shone across the tracks, but no light outside except a lantern which the night operator carried, until the headlight of the approaching engine lighted up the tracks. Before the train came the persons about the place could all see the platform and rails and the locations of persons on the north platform, as well as the trucks of the express man and night operator, and they testified to such locations. The train was due and was expected. The express agent, with the express matter on a truck, had gone across to the north platform and plaintiff followed the night operator, with the baggage truck, across toward that platform. There was evidence that the train had whistled for the station. At any rate all parties expected it at the time. There was some question at the trial whether plaintiff had got across the tracks when he was struck by the engine.

George R. Swengel, a witness called by him, was the express agent who was at his truck on the north platform, and he testified that he saw him coming across the tracks; that when he last saw him he was at about the middle of the north track between the rails and the engine was about half a length from him, some fifteen or twenty feet; that he did not see him any longer on account of the rays of the headlight being cast directly in front, above plaintiff's head, and by their intensity making the space below them, at the pilot, dark, and that the next he saw of plaintiff he fell on the platform thirty-five or forty feet west of where he crossed. Plaintiff's witness, Oscar Arling, who drove the omnibus, testified that he saw plaintiff about seven feet up in the air in front of the engine, which would indicate that he was struck by a part of the engine which would throw him upward. Plaintiff was certain that he had crossed the tracks and taken a position on the platform, and that he had stood there thinking about business matters before he was struck. If we assume that his version is correct, and there is some corroborating evidence, there can be no doubt that he was practically in front of the part of the engine that struck him, for he was either thrown or carried a considerable distance in front of the engine and nearly in line with it. He was not only seen in the air in front of the engine, but he fell with his head and part of his shoulders between the rail and the platform, and Swengel pulled him away from the side of the train. If he was on the platform he was on the edge of it. The edge of the platform was nineteen and one-half inches from the outside of the nearest rail, and the bunting-beam of the engine which struck him extended over the edge of the platform but four and three-fourths inches. The bunting-beam was about the height of his hip where the neck of the thigh bone was broken. The headlight of the engine was burning and lighted up the track for a distance of two or three hundred feet ahead of the engine, except immediately in front and below the light. A short distance east of the depot the tracks curved to the north, and the headlight came in view of the persons on this platform, at least five or

six hundred feet east of the depot. There is but little, if any doubt, from the evidence, that the bell on the engine was ringing on the approach to the station. There was some difference of opinion in the estimates of speed of the train, but it stopped at its usual place without any new application to the brakes, and it stopped before it passed plaintiff, who was lying by the side of the train. There was no evidence of negligence in respect to light or speed as a cause of the injury.

The evidence at the trial and the argument here is mainly directed to the charge that defendant was guilty of negligence in the construction of the platform fr om which plaint iff was to get on the train. The platform, considered merely as a platform, was safe and free from objection and no one could be injured by it. It was firm and level, free from obstructions or holes and of sufficient width. The only possible danger to one using it consisted in its being near to the track along which a train might come and injure a person, and this is the particular in which it is argued that defendant was negligent. It is insisted that a platform for use in getting upon and alighting from cars, should be so far from the nearest rail that a passenger may stand with safety at any point on the platform, no mat- ter how near its edge, without any risk of being struck or injured by a passing train, and that it is negligence to build a platform so near that a person may not stand on its verge in security while an engine approaches and passes him. A railroad track along which a train may pass is necessarily a place of danger. Platforms along such places are designed to afford a means of passage along and approach to the trains. Every person knows that it is not safe or prudent to stand on the edge of a platform while a train is passing, if the train does not overlap the platform at all, and only comes even with its edge. To be safe for such purposes a platform would have to be some distance away so as to be unservicable as a platform. Such a platform as a person of reasonable prudence would stand on the edge of while a train would pass him, would be of no use in alighting from or getting on cars.

There was some evidence as to how far certain kinds of cars extended over this platform, but that is immaterial in this case and has nothing to do with plaintiff's injury. He was struck by the engine, which extended over the platform four and three-fourth inches, and the fact that some kind of car would extend over further, did not injure him. To build a platform so narrow or in such manner between tracks as to compel a passenger to stand dangerously near a train, has been held to be negligence for which a company is liable in case of injury; but where the platform was eight feet wide, so as to afford plenty of room to stand in safety, we think it was clearly not negligence to build it so that the nearest edge could not be occupied in safety as a standing place while a train was passing. Matthews v. Pennsylvania Ry. Co., 24 At. Rep. 67.

Plaintiff testified that he had an overcoat on and had it turned up around his ears; that he stood with his back toward the direction that the train was to come from, looking southwest; that he could see the rail and the line of the platform; that the keeper of the hotel in Kewanee did not want to keep show people, and that he was thinking about that fact and trying to scheme some way to avoid the difficulty, when something flashed on him, causing him to turn slightly to look and see what was coming, and he was immediately struck and remembered no more. The headlight necessarily illuminated the track, but he testified that he did not see the headlight and had no recollection of hearing the rumble of the train, but that the light from the depot shone across the tracks and showed the platform and the rail near it. It is clear that he was paying but little if any attention to his surroundings and was giving no heed to the approach of the train, which he came there to take. His thoughts were elsewhere, and so far as this train was concerned, he was making no use of any of his senses, nor paying any attention to the business that brought him to the station. It is insisted in his behalf that in so doing he was not guilty of negligence; and the argument proceeds upon the theory that a railroad platform is made by the company for passengers to stand on while waiting for trains, and that

being invited to stand there he had a right to presume that he could stand next the track and be safe; that he was thereby lulled into a feeling of false security, and that the defendant thereby became responsible for his inattention to probable danger. It is argued that there was no requirement of precaution on his part to keep a lookout for the train, but that he had a right to be engaged in thought about other business, relying for safety upon the supposed duty of the defendant to build its platform so that he would not be hurt by a train passing it, provided only that he was on the platform. We are unable to agree to these propositions. There were waiting rooms provided in the depot, where no train could disturb him and where he could become absorbed in thought or study out his problems. When he went on the platform his business there was to take the train, and he should give reasonable attention to that business. Ordinary prudence required that he should pay some attention to know how near he was to the train. He testified that he thought he was about the middle of the platform, but he could see the south edge, and any attention at all would have shown him that he was not in the middle. There was nothing to excuse his want of attention. There might be cases where a person might be engaged in some act with baggage or with some other person, or something might occur that would affect the question of care on his part; but plaintiff had no excuse and no other business there except to take that train. Upon the evidence, the accident can only be accounted for upon the belief that he became so abstracted in thought that he was oblivious of his surroundings. It seems clear to us that he was guilty of negligence, which was the proximate cause of his injury.

We find no reversible error in rulings on the evidence or in the instructions.

For the reason that the evidence failed to prove negligence on the part of appellant, causing the injury, or ordinary care on the part of appellee, the judgment will be reversed and the cause remanded.

*Reversed and remanded.*