## Chicago & E. I. R. R. Co. v. John M. Weir, Adm'r, etc.

1. ORDINARY CARE—*No Recovery Without the Exercise of.*—A passenger alighting from a railroad train upon a platform between different railroad tracks, but of sufficient width to allow him to pass safely with the exercise of reasonable care, can not recover if he allows himself to become so oblivious to his surroundings that he fails to exercise reasonable care for his personal safety.

**Trespass on the Case.**—Death from negligent act. Appeal from the Superior Court of Cook County; the Hon. ARTHUR H. CHETLAIN, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1899. Reversed and remanded. Opinion filed October 24, 1900.

W. H. LYFORD and S. A. LYNDE, attorneys for appellant.

DAVID M. BALL and E. W. ADKINSON, attorneys for appellee.

MR. PRESIDING JUSTICE SHEPARD delivered the opinion of the court.

This is an appeal from a judgment for $5,000, recovered by the appellee in a suit brought by him as administrator of the estate of David Benson, for the alleged wrongful killing of said Benson.

The appellant was operating a railroad running from Dearborn street station, in the city of Chicago, southwardly. In its course it crossed Sixty-third and Sixty-fourth streets at right angles or substantially so, they being east and west streets in the suburb known as Englewood. On the south side of Sixty-third street and on the east side of the tracks is situated the Englewood station.

At that point there were four railroad tracks, the two westernmost ones being freight tracks, and the two easternmost ones being passenger tracks. Of these last two, the one nearest to the station building was used for north-bound or incoming passenger trains and the next one was used for south-bound or outgoing passenger trains. We will speak of these two tracks as numbers one and two, the former being the one nearest to the station building.

The space between these tracks was eight feet wide and was planked from Sixty-third street to Sixty-fourth street of the full width and about on a level with the top of the rails.

The space between the rails of track number one was not planked any part of the distance, except at three or four places there were plank cross-overs. On the east side of track number one, and between it and the station building, the space was all filled with planking on about a level with the tops of the rails.

The station building fronted about 170 feet upon the tracks, and between it and the east rail this planking was about twenty-two feet wide, and such planking extended, also, all the way from Sixty-third street to Sixty-fourth street, though of a diminishing width about the last half of the distance, it being only nine feet wide.

There was, therefore, planking close up to and upon a level with the rails, forming walks all the way from Sixty-third street to Sixty-fourth street on the east side of track number one, and between tracks numbers one and two. And the evidence shows that the walks were used by passengers indiscriminately who had occasion or inclination to pass to and from the station, or trains, to Sixty-fourth street, and almost necessarily so, with the knowledge and consent and by the implied invitation of appellant.

On the evening of February 12, 1895, Mr. Benson, appellee's intestate, was a passenger on one of appellant's suburban passenger trains, from Chicago, running upon track number two. The train arrived at the Englewood station at about, or a little after, seven o'clock. It was a wintry evening with snow in the air, windy, dark and cold. The

train stopped south of Sixty-third street and in front of the station, and Benson alighted from the smoking-car, next the locomotive, and walked southward, toward Sixty-fourth street, on the planking or walk between tracks numbers one and two. His home was on Sixty-fourth street, west of the railroad. He had nearly reached Sixty-fourth street, when he was struck by the pilot of a north-bound engine drawing a passenger train on track number one and killed. His body was picked up seventy-five or a hundred feet north of Sixty-fourth street.

All witnesses, on both sides, who testify on the subject, concur in saying that this north-bound engine was carrying a bright headlight, which was seen by numerous of them, and it is plain that it was visible by Benson, if he looked, for a considerable distance before he was struck.

This north-bound train was due at the station one minute later than the train from which Benson alighted. It had stopped a little south of Sixty-fourth street, in obedience to a block signal, and had then again moved forward in response to another signal. That it did not move forward too soon to allow passengers from the train that Benson traveled on, a reasonable time to get off and cross over track number one to the main platform in front of the station building, is clearly shown by the testimony of numerous witnesses, who testified that they took that course and had proceeded well along on their way home on that platform, before that train came along and struck Benson.

There was evidence tending to show that at the time Benson was struck, the train on track number two had not entirely passed him, and that therefore, when he was struck, he was between the two trains.

But, whether so or not, and whether or not he was considerably muffled about his head by his overcoat and was walking with his hands in his overcoat pockets and looking down, does not seem to us to be at all controlling, in themselves. Nor do we give much weight to the argument for appellant that there was a positively safe place for Benson to walk, afforded by the platform on the east side of the tracks.

We consider the planking between tracks one and two, as constructed and used, as being as much a part of the platform provided by appellant for the use of its passengers, as the planking or platform that was next to the station building and east of the tracks. Neither platform afforded an absolutely safe place for a heedless passenger to walk over.

A man might as easily be hit if walking on the main east platform, as if walking on the platform between the tracks. The planking was as close to the rail in one case as in the other, and the pilot of an engine would just as surely strike a person on one platform as on the other, if he walked on the edge close up to the rail. The course of a locomotive with reference to the tracks it is run over must necessarily be practically an undeviating one. It is not necessary for us, therefore, to lay any particular stress upon the testimony of witnesses who saw Benson walking along close up to the west rail of track number one. The fact of his being hit by the pilot, shows conclusively that he was so walking. There is no evidence that he slipped or stumbled, or in any way fell toward the rail.

It is simply the case of a man walking on a part of a platform, provided for passengers, where he must inevitably be struck if an engine should come along.

If instead of using the platform between the tracks, he had crossed track number one and proceeded homewards on the main or east platform, he would just as surely have been hit by the incoming locomotive, if he had walked as near the track as he did upon the platform upon which he was hit. In neither case would he have been safe from the consequences of his own heedlessness. The platforms were of themselves, equally safe.

It was neither charged nor proved that the accident was in any respect due to defects in the platform. The specific negligence charged by the declaration is as follows:

" That when the said defendant had stopped a train of cars going south, in the evening of said day, at the said depot, at the said Sixty-third street, for the purpose of allowing pas-

sengers to alight from and get upon said train, and while passengers were so alighting from said train and passing over the said platform to the depot and to the adjoining streets, the said defendant ran a train of cars going north upon said railroad tracks, between the train going south and the said depot, by means whereof the said David Benson, who had alighted from the said train going south, and with all due care and diligence was then and there passing over platforms so constructed by the said defendant, was then and there struck by a train of the said defendant then and there going north, and the said David Benson was then and thereby thrown with great force and violence to and upon the said platform, and was then and thereby run against by the engine drawing said train, and was then and thereby killed."

It may perhaps be considerably doubted whether the gist of the negligence so charged was sustained by the evidence.

It is perfectly plain from the evidence that the north-bound train, which struck Benson, was not any time between the south-bound train and the depot. The south-bound train had discharged its passengers and started south toward Sixty-fourth street, before the north-bound train crossed Sixty-fourth street. Benson, himself, had walked nearly as far south as Sixty-fourth street before he was hit, and the south-bound train had overtaken and nearly passed him before he was hit.

The depot building stood on the north part of the block (about forty rods long) and Benson was hit within 100 feet of Sixty-fourth street. But assuming, for the purpose of this case only, that the declaration may be read as charging negligence in the running in of the north-bound train on track number one between passengers who were traversing the platform on which Benson was walking and the main platform next the depot, a possible case for the jury was made by the evidence.

Still, as we do not decide the case on the ground that no negligence by the appellant was shown, we need not pursue the discussion of that question.

Upon the question of the care and diligence exercised by Benson for his own safety, the uncontroverted facts dis-

closed such a lack in that respect by him as in our opinion must defeat a recovery. He was walking upon a platform and under surroundings with which he was presumably entirely familiar. He must have seen, if he looked, the headlight of the approaching engine that was plainly visible to everybody else. The engine was moving at a speed of about eight miles an hour. He could have seen that he was perilously near the track, if he had paid any ordinary attention to his surroundings.

The engineer of the locomotive that drew the train on which he had ridden saw that he was walking close to the rail and called to him, as his engine passed him, to look out for the coming train, but without attracting his attention. It is entirely clear that he was paying no attention to his surroundings, at a time when ordinary care by him was the least of his duty. The fact of snow, smoke and steam being blown about does not, in our opinion, relieve the case from the plain want of care shown by Benson.

It was not the case of a platform that required persons using it to walk or stand dangerously near passing trains, but was that of a platform that was safe if used with ordinary prudence.

The opinion of Mr. Justice Cartwright, in C., B. & Q. R. R. Company v. Mahara, 47 Ill. App. 208, states the law applicable to the use a passenger may make of a railway station platform, constructed much as this one was, and the care demanded of the passenger, and we refer to it as being in point.

We do not consider it to be necessary to prolong our opinion with a repetition of familiar rules applicable to cases of contributory negligence by an injured party.

This seems to be so plain a case of total disregard by Benson to take reasonable care of himself, as not to admit of a different opinion by reasonable minds. The proximate cause of his death was his own lack of ordinary prudence and on that ground the judgment should be reversed and the cause remanded, unless appellee shall be satisfied to have the cause reviewed by the Supreme Court on the

record already made. If so, and he shall move accordingly within ten days, we will enter a judgment of reversal only and make a finding of facts.

Reversed and remanded, unless appellee shall within ten days ask for a judgment of reversal only.