O. J. PETERSON, *as Receiver, etc.*, V. LUCINDA BAKER.

No. 15,591.   (97 Pac. 373.)

SYLLABUS BY THE COURT.

1. RECEIVERS—*Appointment by Federal Court—Parties in State Courts—Service of Process.* Under the provisions of sections 2 and 3 of an act of congress passed March 3, 1887, 24 U. S. Stat. at L., p. 554,) a receiver who is in charge of corporate property under an appointment by a federal court may be sued in the courts of a state where the property is located without first obtaining leave of the court making the appointment, and process may be served upon such receiver in the manner prescribed by the law of such state for service of like process upon the corporation.

2. ——— *Discharge—Pending Suit—Dismissal.* Where such a receiver has been properly sued in a state court and is afterward discharged by the court where the appointment was made, and the property of which he was in charge is returned to the owner, but provision is made in the order of discharge for a continuance of the suit in the name of the receiver, such discharge does not furnish a sufficient reason for the dismissal of the suit in the state court.

3. PRACTICE, DISTRICT COURT—*Instructions.* It is not error for the district court to refuse to give an instruction to the jury as requested when substantially the same statement of the law is contained in the instructions which are given.

4. ——— *Same.* Where the trial court is requested to give an instruction to the jury the materiality of which depends upon the existence of numerous facts recited therein, and the request is refused, the error, if any, committed by such refusal will be rendered harmless if the jury by their special findings of fact find against the requesting party as to the existence of the facts recited.

Error from Allen district court;. OSCAR FOUST, judge. Opinion filed June 6, 1908. Affirmed.

*Altes H. Campbell,* and *John F. Goshorn,* for plaintiff in error.

*Chris Ritter, G. R. Gard,* and *J. B. Atchison,* for defendant in error.

22—78 KAN.

The opinion of the court was delivered by

GRAVES, J.: This action was commenced in the district court of Allen county by Lucinda Baker to recover damages sustained by her when alighting from a street-car in the city of Iola. She recovered a judgment against the receiver of the Iola Electric Railroad Company, and he prosecutes error.

The first error assigned is that the district court did not acquire jurisdiction of the receiver, for the reason that he was not properly served with process. The summons issued was in due form; the return thereon reads:

"*State of Kansas, Allen County, ss.*:

"Received this writ this 30th day of October, 1905, and, as commanded therein, I served the same upon the following persons of the defendants, within named, by delivering to each of said defendants, personally, a true and certified copy of the within summons, with all the indorsements thereon, at the time following, to wit: Otto S. Heberling, who was at the time of such service the general manager, and in control, of the Iola Electric Railroad and its property under said defendant O. J. Peterson, receiver of said railroad, said receiver, O. J. Peterson, not being found in my county, said Otto S. Heberling being then and there in charge of the general office of such receivership, at Iola, in said county, and said Iola Electric Railroad being located wholly within said county."

A motion to set aside this service was duly filed by the receiver, appearing specially therefor, and was denied.

On March 3, 1887, congress provided that receivers for corporations in actions pending in the federal courts could be sued in the state courts without first obtaining leave of the court wherein the receiver was appointed. Sections 2 and 3 of the act read:

"That whenever in any cause pending in any court of the United States there shall be a receiver or manager in possession of any property, such receiver or

manager shall manage and operate such property according to the requirements of the valid laws of the state in which such property shall be situated in the same manner the owner or possessor thereof would be bound to do if in possession thereof. Any receiver or manager who shall wilfully violate the provisions of this section shall be deemed guilty of a misdemeanor, and shall, on conviction thereof, be punished by a fine not exceeding $3000, or by imprisonment not exceeding one year, or by both such punishments, in the discretion of the court.

"That every receiver or manager of any property appointed by any court of the United States may be sued in respect of any act or transaction of his in carrying on the business connected with such property, without the previous leave of the court in which such receiver or manager was appointed; but such suit shall be subject to the general equity jurisdiction of the court in which such receiver or manager was appointed, so far as the same shall be necessary to the ends of justice." (24 U. S. Stat. at L., p. 554.)

These sections were reënacted as a part of chapter 866 of volume 25 of the United States Statutes at. Large, page 436, August 13, 1888. By this statute receivers were placed upon the same plane, with respect to the service of process, as the corporations whose property they controlled. (*Central Trust Co. of New York v. St. Louis, A. & T. Ry. Co.,* 40 Fed. 426; *Eddy v. Lafayette,* 163 U. S. 456, 16 Sup. Ct. 1082, 41 L. Ed.. 225.) It follows that the district court acquired jurisdiction of the receiver if he was properly served under the laws of this state. The statute upon this subject is section 68 of the civil code, which reads:

"A summons against a corporation may be served upon the president, mayor, chairman of the board of directors, or trustees, or other chief officer; or, if its chief officer is not found in the county, upon its cashier, treasurer, secretary, clerk, or managing agent; or if none of the aforesaid officers can be found, by a copy left at the office or usual place of business of such corporation, with the person having charge thereof."

It seems that under this statute the return shows

good service upon the receiver and the court was justified in denying the motion to set it aside. Service was made in Iola, Allen county, at the receiver's general office in that county, by leaving a copy of the summons with the receiver's general manager, who was then in charge of the office and in control of the electric railroad in the hands of the receiver. This was sufficient.

After the motion to set aside the service was denied a motion to dismiss was filed, based upon the ground that the receiver had been, since the suit was commenced, discharged by the federal court which had appointed him, and that his powers thereby ceased. It appears from the action of the federal court in this matter that the road was taken out of the hands of the receiver and restored to the company; that this case, with others then pending in the state courts against the receiver, was turned over to the company to defend; and that the corporation was ordered to save the receiver harmless from any judgment which might be entered against him in such cases, and, in case of failure to do so, the property was to be held responsible therefor. The order evidently contemplated a continuance of the suit in the name of the receiver. We are unable to say that the court erred in denying the motion to dismiss.

The court refused three instructions requested by the receiver. The first directed a verdict for the defendant. This was clearly incorrect and need not be considered further. The second one reads:

"If you believe from the evidence that the place where the car in question stopped just before plaintiff attempted to alight therefrom was not a regular stopping place, but a 'call stop' only, and that plaintiff did not inform the conductor or motor-man of said car that she wished to alight at said place, you would not be warranted in finding the defendant guilty of negligence in causing said car to be started ahead while plaintiff was attempting to alight therefrom, unless you further believe from the evidence that the conductor or motor-

man of said car saw or knew that she was intending or attempting to do so at the time said conductor signaled his motor-man to proceed with his car."

This instruction was given in substance, but was modified by another which reads:

"If the conductor of the car on which the plaintiff was a passenger saw the plaintiff at the time she was alighting from the car or by the exercise of ordinary care in performing his duties as such conductor could have seen her, then it was his duty to hold his car until she had alighted; and under such circumstances, if he did signal the motor-man to start the car while the plaintiff was alighting, such act was negligence on his part."

The instruction, as thus modified, applied directly to the facts of the case, and we can not say that the court erred in refusing to give the one requested, without modification. The third instruction requested reads:

"If you find from the evidence that at the time plaintiff was leaving the car and at the time she alighted therefrom said car was in motion, and that she took hold of the hand-rail at the rear of the vestibule, and at the time she alighted from the car she still retained hold of said hand-rail, and that, while so holding to said hand-rail, her face was toward the rear of the car, in a direction opposite from the conductor, and in such direction that she could not see the conductor or any signal which he gave, and, while she was in such position, with the car in motion, she did alight therefrom, and the jury believe that the position plaintiff then took and was then in had anything to do with or in any way contributed to plaintiff's fall which she received at the time, then plaintiff can not recover in this action, and your verdict should be for the defendant."

This instruction groups the facts in the case supposed to bear upon the question of contributory negligence. It is a form of instruction not to be encouraged. It is calculated to mislead the jury, and does not harmonize with the recognized distinction between the functions of the court and the jury in the determina-

tion of questions of fact. An instruction which gives the rules of law applicable to the facts shown in the case, leaving the jury to make the application, is preferable. The instruction given by the court upon this subject seems quite clear and fully covers the case. The materiality of the instruction requested was destroyed, however, by the special findings of the jury, as the facts stated therein were found not to have contributed to the injury. No error, therefore, can be predicated upon the action of the court.

Objection is made to an instruction given to the jury by the court which reads:

"You are further instructed that the plaintiff can not recover, notwithstanding there may have been negligence on the part of the defendant or his agents or employees which may have contributed to the accident, if she, by the want of ordinary care and prudence, as defined in these instructions, and by her own voluntary acts, so far herself contributed to the accident that but for this fact it would not have happened."

The last clause of the closing sentence constitutes the objectionable feature. It is insisted that the law here stated relieves the plaintiff of responsibility for contributory negligence unless such negligence causes the injury, while the true rule is contended to be that negligence of the plaintiff, however slight or remote, if it contributes in any degree to the injury, will relieve the defendant of liability. The instruction given is sustained by an abundance of authority. In volume 7 of the American and English Encyclopædia of Law, at page 373, the author of the article on "Contributory Negligence" uses a similar expression in the definition of that phrase. (See, also, 1 Thomp., Com. Law of Neg., § 221.) The same rule has long been followed in this state. In the case of *Pacific Rld. Co. v. Houts*, 12 Kan. 328, the defendant requested the court to instruct the jury that if the plaintiff was guilty of negligence which contributed even in the slightest degree to the injury he could not recover. This was refused and the

refusal assigned as error. Mr. Justice Brewer, in the opinion of the court, said that the instruction requested was manifestly incorrect and declined to consider it in detail. (See, also, *U. P. R. W. Co. v. Rollins,* 5 Kan. 167; *Sawyer v. Sauer,* 10 Kan. 466; *W. & W. Rld. Co. v. Davis,* 37 Kan. 743, 16 Pac. 78, 1 Am. St. Rep. 275; *U. P. Rly. Co. v. Henry,* 36 Kan. 565, 14 Pac. 1.) In the case of *Railroad Co. v. Jones,* 95 U. S. 439, 24 L. Ed. 506, the court held:

"One who by his negligence has brought an injury upon himself can not recover damages for it. Such is the rule of the civil and of the common law. A plaintiff in such case is entitled to no relief. But where the defendant has been guilty of negligence also, in the same connection, the result depends upon the facts. The question in such case is (1) whether the damage was occasioned entirely by the negligence or improper conduct of the defendant, or (2) whether the plaintiff himself so far contributed to the misfortune by his own negligence or want of ordinary care and caution that but for such negligence or want of care and caution on his part the misfortune would not have happened.

"In the former case, the plaintiff is entitled to recover. In the latter he is not." (Page 442.)

It is needless to consider here whether the instruction is accurate in its statement of the law or not, as the findings of the jury show that plaintiff's conduct did not contribute to the injury, either wholly or partially. The jury returned special findings of fact with their general verdict which read:

"(1) Ques. Where did the plaintiff get on defendant's car from which she attempted to alight at the time she received the injuries complained of in this action? Ans. La Harpe.

"(2) Q. Was Mr. Reaser the conductor of said car at the time of the alleged injuries to the plaintiff? A. Yes.

"(3) Q. Was said car west bound at said time? A. Yes.

"(4) Q. Was the intersection of Washington and Madison avenues in Iola one of the regular stopping

places of defendant's cars, or a 'call stop' only? A. Call stop.

"(5) Q. What was the length of said car? A. Fifty-one feet.

"(6) Q. Was said car stopped as it approached, or was rounding the curve from, Madison avenue into Washington avenue in the city of Iola, and just before plaintiff attempted to alight therefrom? A. Stopped on curve.

"(7) Q. State how many passengers were aboard said car when it stopped, if it did stop. A. About six persons.

"(8) Q. If you answer question No. 6 affirmatively, state in what part of said car plaintiff was when it stopped and how far from the rear end thereof. A. Second seat from sand-box on north side of car.

"(9) Q. If you answer that said car stopped, state how long it remained standing there. A. From one to two minutes.

"(10) Q. Did conductor Reaser leave said car at the time, or immediately after, it stopped, for the purpose of taking supper to the motor-man of the Bassett car standing on another track west of said car? A. Yes.

"(11) Q. If you answer the last preceding question affirmatively, state whether or not conductor Reaser, after delivering motor-man Forney's supper, signaled or told the motor-man of his own car to move ahead; and, if so, was the signal obeyed? A. Yes.

"(12) Q. If you find that conductor Reaser signaled his motor-man to proceed, state how far the conductor was from the side of his own car when he signaled his motor-man to proceed, if he did. A. From ten to fifteen feet.

"(13) Q. What was the destination of the other passengers, aside from plaintiff, if any, who were aboard said car in question when it stopped, just before plaintiff attempted to alight therefrom, if it did? A. No evidence.

"(14) Q. How far away, and in what direction, from said last-mentioned car was motor-man Forney when conductor Reaser delivered his supper? A. About one hundred feet to the southwest.

"(15) Q. Did said plaintiff attempt to alight from said car in question while it was on said curve? A. Yes.

"(16) Q. If you find that conductor Reaser signaled

his motor-man to proceed, state how far the conductor was from the front end, and toward the rear, of his own car when he gave the signal. A. About seventeen feet from front end.

"(17) Q. Did the other passengers, if any, on said car, as it approached Washington avenue, alight therefrom at or about the time it stopped and before the plaintiff attempted to alight? A. Yes.

"(18) Q. If you answer question No. 17 affirmatively, then state how many, and on which side of the car. A. About four or five, on south side.

"(19) Q. Where was plaintiff on said car in question when it first began to move in obedience to conductor Reaser's signal, if he gave any? A. Plaintiff was on last step.

"(20) Q. Did conductor Reaser know that plaintiff was attempting to alight from said car when he signaled his motor-man to move his car ahead? A. No.

"(21) Q. In attempting to alight from the car in question did plaintiff take hold of the outside rear handrail? A. Yes.

"(22) Q. If you answer question No. 21 affirmatively, then state whether she continued to hold to the hand-rail after alighting. A. No.

"(23) Q. Whereabouts on the car in question was plaintiff when conductor Reaser signaled his motorman to proceed with his car, if he did? A. No evidence.

"(24) Q. Did conductor Reaser look to see whether any passengers were alighting from said car at or just before signaling his motor-man to move said car ahead? A. Evidence not sufficient whether he did or did not look.

"(25) Q. Did the motor-man of said car, at the time or before he started it ahead in obedience to the conductor's signal, if he did, know that plaintiff was about to alight therefrom? A. No.

"(26) Q. On what part of said car was the motorman's post of duty at said time? A. Front end.

"(27) Q. Was the motor-man at his post of duty at said time? A. Yes.

"(28) Q. If you find for the plaintiff, do you find for her on the ground that the motor-man of said car failed to observe that she was about to alight therefrom at the time he started his car ahead? A. No.

"(29) Q. Did conductor Reaser, after signaling his

motor-man to move the car in question ahead, see plaintiff alighting therefrom before she fell to the pavement, if she did? A. He saw her as she was falling.

"(30) Q. If you answer question No. 29 affirmatively, state whether there was time to stop said car after he saw her and before she fell. A. No.

"(31) Q. Did the plaintiff at any time inform the conductor or motor-man of the car in question that she wanted to alight at the place where she attempted to do so? A. No.

"(32) Q. Was the plaintiff, in attempting to alight from the car in question, getting off backward, or with her back toward the front and her face toward the rear of said car? A. Plaintiff's back toward front end of car.

"(33) Q. If you answer question No. 32 affirmatively, state whether her acts in that respect were careless, and partially or wholly caused her to fall. A. No.

"(34) Q. Was the plaintiff holding onto the handrail at the corner of the body of the car with her right hand while attempting to alight? A. No.

"(35) Q. Was plaintiff's face, at the time she was on the steps of the car, just immediately before she alighted therefrom, toward the east or southeast? A. Yes.

"(36) Q. Was plaintiff's face, at the time she was on the steps of the car, just immediately before she alighted therefrom, in such position she could not see conductor Reaser? A. Yes.

"(37) Q. At the time plaintiff attempted to alight from the car did she know that the car was then in motion? A. She did.

"(38) Q. At the time plaintiff attempted to alight from the car, did she know the conductor was not on the car? A. She knew he was not.

"(39) Q. When not engaged in collecting fares while the car is in motion where is the conductor's place to stay on the car? A. Rear end.

"(40) Q. Did plaintiff give any signal or do anything to notify the motor-man she desired to alight, after the car started, at the place where she was injured? A. No.

"(41) Q. Did the plaintiff ask any one to signal the motor-man to stop the car just before she was injured? A. No.

"(42) Q. If you answer question No. 35 in the af-

firmative, then did the position of plaintiff on the steps of the car, just prior to her alighting and when she attempted to alight, prevent plaintiff from being able to avoid the fall?   A.   No."

The defendant requested the court to require the jury to answer findings numbered 23 and 24 more definitely, which was refused, and this is assigned as being erroneous.   In view of the other findings of fact, numbers 23 and 24 do not seem to be very important. The physical fact, found by finding No. 19, that when the car began to move the plaintiff was "on the last step" indicates quite clearly that she was on the car engaged in the act of getting off, and was visible when the signal was given.   Several passengers besides the plaintiff got off of the car at that place, which was sufficient to call the attention of the conductor to the fact that passengers were leaving the car.   It was his duty, before causing the car to move, to know whether passengers were in a position to be hurt thereby or not. He should have been where he could see.   A conductor may not say, "I did not, or could not, see when I caused the car to move."   It was his duty to see.   The jury could not have answered these special questions so as to relieve the conductor from negligence.   If he was where he could not see, it was negligence to be there; if where he could see, it was negligence not to know.

The plaintiff did not begin to alight while the car was in motion, for she was just in the act of stepping off when it began to move.   It can not be said, therefore, that any answer to these questions which would have been justified by the evidence could have affected the question either of the negligence of the defendant or of the contributory negligence of the plaintiff.

. We are unable to find that the court committed material error in any of the matters presented, and the judgment is therefore affirmed.