## ARNOLD v. HORRIGAN.

(Circuit Court of Appeals, Sixth Circuit. December 15, 1916.)

No. 2810.

1. ELECTION OF REMEDIES ⬤⟿3(1)—WHAT CONSTITUTES—TROVER.

Shortly before bankruptcy the bankrupt converted into cash part of his assets, and thereafter certificates of deposit for the amount of the cash realized were issued, payable to the order of the bankrupt's attorney. Subsequently the bankrupt absconded, and the certificates, indorsed in blank by the attorney, were cashed by the bankrupt in Canada. The trustee claimed that the proceeds were invested in land, title to which was taken in the name of the bankrupt's wife, and through the aid of the Canadian courts undertook to reach the land, but nothing was realized. Thereafter the trustee sued the attorney. Some of the counts in the complaint in the action against the attorney were counts in trover, alleging the attorney's conversion of the certificates of deposit to his own use, or to that of the bankrupt; but another count alleged no technical conversion, averring that the attorney, with intent to hinder, delay, and defraud the rights of the bankrupt's creditors and trustee, caused money in the possession of the bankrupt to be converted into negotiable instruments payable to him, and, with intent to defraud, hinder, and delay, indorsed the instruments over to the bankrupt to the trustee's damage. *Held* that, as such count must be deemed one on the case, seeking recovery of damages for the diversion, rather than one of trover, recovery on such count cannot be denied upon the theory that, as an action of trover, under the Michigan practice, in which state bankruptcy occurred and in which state was located the District Court wherein action was begun, vests good title in the defendant, the attempt to follow the proceeds of the certificates of deposit was an election to pursue an inconsistent remedy.

[Ed. Note.—For other cases, see Election of Remedies, Cent. Dig. § 3; Dec. Dig. ⬤⟿3(1).]

2. APPEAL AND ERROR ⬤⟿206(1), 216(1)—REVIEW—PRESENTATION OF GROUNDS OF REVIEW IN COURT BELOW—NECESSITY.

In such case, where defendant did not object that evidence of the Canadian proceedings was not admissible under some of the counts of the complaint, and requested no charge that the election of remedies applied only to some of the counts, the question of the limited bar by election of remedies, and limited purposes for which evidence might be introduced, cannot be reviewed on appeal.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 1283-1285; Dec. Dig. ⬤⟿206(1), 216(1); Trial, Cent. Dig. § 630.]

3. BANKRUPTCY ⬤⟿279—TRUSTEE—RIGHTS OF.

In such case, though the diversion occurred before adjudication in bankruptcy, and although Bankr. Act July 1, 1898, c. 541, 30 Stat. 544,

---

⬤⟿For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

merely declares that the trustee, when appointed, takes title as of the date of adjudication, nevertheless for many purposes such title relates back to the filing of the petition, and so, the suit being in effect one against two tort-feasors, whose action has taken property out of the bankrupt's estate, and put it beyond the reach of the trustee, it may be maintained, notwithstanding any want of power of the trustee to sue for a tort antedating the bankruptcy proceedings.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 419–424; Dec. Dig. ☞279.]

4. BANKRUPTCY ☞279—TRUSTEE—RIGHTS OF.

After the filing of a petition in bankruptcy the bankrupt consented to the appointment of a receiver, but subsequently, with the assistance of defendant, he diverted money belonging to his estate. *Held*, on appointment of a trustee after adjudication, the title of the trustee and the possessory right of the receiver merged, so that the trustee's right will be considered as if the diversion had occurred after appointment.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 419–424; Dec. Dig. ☞279.]

5. BANKRUPTCY ☞101—DIVERSION OF ASSETS OF ESTATE—LIABILITY OF THIRD PERSONS.

An attorney of a bankrupt, who had received cash belonging to the bankrupt, after the petition was filed and the bankrupt had consented to appointment of a receiver, procured certificates of deposit payable to his order, which he indorsed in blank to the bankrupt. *Held* that, as the receiver had possessory right to the bankrupt's estate, the attorney, notwithstanding the filing of the petition, did not change his relation and authorize him in withholding the money from the bankrupt, and is liable to the trustee in bankruptcy for his delivery of the certificates to the bankrupt, enabling him to defraud his creditors.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 163; Dec. Dig. ☞101.]

6. BANKRUPTCY ☞304—PROPERTY OF ESTATE—EVIDENCE—SUFFICIENCY.

In an action against an attorney for assisting a bankrupt to divert moneys from his estate, the question of the attorney's participation in the scheme *held* for the jury; the evidence being conflicting.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 463; Dec. Dig. ☞304.]

7. APPEAL AND ERROR ☞1050(1)—HARMLESS ERROR.

In an action against the attorney of a bankrupt for his participation in the conversion by the bankrupt of money belonging to his estate, the admission of evidence that in one case the bankrupt, who was seeking to obtain currency, was persuaded to take a draft, was harmless, if erroneous; there being abundant evidence that the bankrupt had converted much of his property into money.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 1068, 1069, 4153, 4157; Dec. Dig. ☞1050(1).]

8. TRIAL ☞244(3), 260(6)—INSTRUCTIONS—REFUSAL—DISCRETION OF TRIAL COURT.

In an action against the attorney of a bankrupt for participation in the bankrupt's fraudulent diversion of funds, the denial of requested instructions that fraud of defendant could not be inferred from particular items of the evidence, and must be shown by clear evidence, was not error; the matter resting in the discretion of the trial court, and the requests not presenting any distinct theory of defense not covered by the general charge.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 579, 656; Dec. Dig. ☞244(3), 260(6).]

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

9. APPEAL AND ERROR ⟨∞⟩1078(1)—REVIEW—WAIVER OF ERROR.

In an action against the attorney of a bankrupt to recover amounts which the bankrupt diverted from his estate, defendant excepted, and assigned error, to the denial of his request that no interest could be allowed until after action was begun. The assignment was not argued on appeal; the whole contention on appeal being that the action was one of trover, and was barred on the theory of election of an inconsistent remedy. *Held*, that waiver of the assignment of error will, where it is determined that the action was not one wholly of trover, but included one on the case, be overlooked, and the propriety of the allowance of interest con- sidered.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 4256; Dec. Dig. ⟨∞⟩1078(1).]

10. DAMAGES ⟨∞⟩208(9)—INTEREST—TORTS—QUESTIONS FOR JURY.

In an action for tort, interest, as such, cannot be recovered as of right, but is discretionary with the jury; plaintiff only being entitled to have the jury consider the delay in reaching the verdict and judgment as one of the elements determining the amount of damage.

[Ed. Note.—For other cases, see Damages, Cent. Dig. §§ 144, 145, 533, 534; Dec. Dig. ⟨∞⟩208(9).]

11. DAMAGES ⟨∞⟩208(9)—INTEREST—UNLIQUIDATED CLAIMS.

In an action against the attorney of a bankrupt to recover damages arising out of the attorney's participation in a scheme whereby the bankrupt diverted from his trustee certificates of deposit, the damages cannot, on the theory that they were the face of the certificates of de- posit, be deemed liquidated, so as to warrant the allowance of interest as a matter of law.

[Ed. Note.—For other cases, see Damages, Cent. Dig. §§ 144, 145, 533, 534; Dec. Dig. ⟨∞⟩208(9).]

12. APPEAL AND ERROR ⟨∞⟩1064(2)—REVIEW—HARMLESS ERROR.

In a tort action for damages, where the facts were such that it could not be certain that the jury would have allowed interest as part of the damages, no demand before suit being shown, · an instruction that interest should be allowed is· prejudicial error.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4221, 4222; Dec. Dig. ⟨∞⟩1064(2); Trial, Cent. Dig. § 528.]

13. APPEAL AND ERROR ⟨∞⟩750(1)—ASSIGNMENTS OF ERROR—SCOPE.

The appellate court is limited in its review to the scope of assignments of error.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 3074, 3075, 3082, 3083; Dec. Dig. ⟨∞⟩750(1).]

In Error to the District Court of the United States for the South- ern Division of the Western District of Michigan; Clarence W. Ses- sions, Judge.

Action by Michael Horrigan, trustee in bankruptcy for the estate of one Reitz, against George H. Arnold. There was a judgment for plain- tiff, and defendant brings error. Affirmed, on condition that plaintiff enter remittitur; otherwise, reversed and remanded for new trial.

C. E. Ward, of Grand Rapids, Mich., for plaintiff in error.

B. B. Selling, of Detroit, Mich., for defendant in error.

Before KNAPPEN and DENISON, Circuit Judges, and SATER, District Judge.

⟨∞⟩For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

DENISON, Circuit Judge. Reitz was a dealer in agricultural implements, and a petition in bankruptcy was filed against him October 12, 1908, in the Western district of Michigan. This was followed by a petition for the appointment of a receiver. A written consent to such appointment, signed by Reitz and by his attorney, Arnold, was filed October 17th, the order of appointment was made on the 19th, and the receiver qualified on the 20th. Shortly before the bankruptcy, Reitz had turned into cash certain of his assets, and had thus received more than $7,000. On October 21st and 22d, different banks in Chicago issued certificates of deposit, payable to Arnold, or his order, aggregating $7,000. At about this time Reitz absconded. An adjudication in bankruptcy, and the election of Horrigan as trustee, followed in due time. Several months later, these certificates of deposit, indorsed by Arnold in blank, were presented by Reitz to a bank in Canada, where they were cashed, and the money received by Reitz was (as it is thought) invested, in his wife's name, by him in lands in Alberta. Horrigan, the trustee, undertook in one way and another, through the aid of the Canadian courts, to reach these lands, but, at last accounts, nothing had been realized. After such effort had been in progress for two or three years, the trustee brought this action in the court below against Arnold, alleging that Arnold was responsible for the diversion of this $7,000 from the bankrupt estate. After a trial upon the merits, verdict and judgment were rendered against Arnold for the full amount of the certificates and interest, and he brings this writ of error.

[1, 2] 1. It is claimed on behalf of Arnold that the legal proceedings taken by the trustee against the Canadian lands amounted to an election to pursue the money or proceeds of the certificates, as being and remaining the property of the bankrupt, rather than to pursue Arnold as for a conversion to his own use; and it is said that the two remedies are inconsistent, because the action against Arnold in trover looks toward the affirmance of his act in taking title to himself, while the proceeding in Canada involves disaffirmance. This inconsistency is developed entirely from the fact that (at least in Michigan—Kenyon v. Woodruff, 33 Mich. 310) a judgment recovered in trover vests good title in the defendant, and the plaintiff cannot thereafter question the title which this defendant has conveyed to others. The point that there had been an election of remedies which would bar this action was raised by objections to evidence and by requests to charge; but we are saved the consideration of the point because we think this action is not to be treated as one solely in trover. The first, third, and fourth counts allege merely the conversion of the certificates by Arnold to his own use, or to that of Reitz, and each is fully and technically a count in trover; but the second count is not so, in form or in substance. It alleges no technical conversion by Arnold or by Reitz, but says that Arnold, with intent to hinder, delay, and defraud the rights of creditors and the rights of the trustee in bankruptcy, caused the money to be converted into negotiable instruments payable to Arnold, which he turned over to Reitz, with intent to keep the same from the trustees, and so deprive plaintiff, as trustee, of the said negotiable instruments, "all to the plaintiff's damage in the sum of $20,000." This is a claim of damages for

diversion, rather for value upon conversion, and we consider it to be what, in Michigan practice, is called an "action on the case," to recover the damages, more or less, which the estate suffered by reason of Arnold's alleged tort. So interpreted, the action is not inconsistent with mere efforts to recover the property itself or to collect damages from other tort-feasors.

If the defendant had pointed out that the evidence of the Canadian proceedings was not admissible under the three specified counts, or had requested the court to charge that there had been an election of remedies which barred recovery under these three counts, it would have been necessary to decide the question which we have passed; but defendant's offers and requests were all on the theory that the action was wholly one of trover, that the evidence was admissible for all purposes, and that the action could not be maintained at all. The limited admissibility of the evidence, and the limited bar which might result, were in no wise brought to the attention of the court.

We are content to rest upon these grounds our conclusion that there was no reversible error in this subject-matter, because it is highly artificial to treat this cause of action as technically in trover. Arnold's substantial offense (if he committed any) was to aid Reitz in the concealing of and running away with this money; the inferred conversion by Arnold to his own use, which could make him liable in trover, was incidental, and did not really characterize his wrong against the estate. We think it the fair interpretation of the language hereafter quoted, in which the issue was submitted to the jury, and of the finding of the jury thereon (both interpreted with reference to the facts involved), that the real thing in controversy was not that kind of conversion by a wrongdoer to his own use which supports the typical trover action, and which is the basis of holding that the title of his transferee becomes good against the plaintiff. For these reasons this defense, as attempted in this case, should have been presented and preserved with distinct reference to that partial application which we think was the only application which in any event could be permissible here; and this was not done.

[3] 2. Treating the suit as being an action against one of two joint tort-feasors, whose action has taken property out of the bankrupt estate and put it beyond the reach of the trustee, we see no reason why it will not lie. It is not merely an action for a tort antedating the bankruptcy proceedings. For such a tort, participated in by the bankrupt, very likely an action by the trustee could not be maintained, at least, if the transaction occurred, as here, before the amendment of 1910; and it may be assumed that, before that amendment, or perhaps even since, the trustee's rights resulting from conveyances made before the petition is filed, and which are in fraud of creditors, are limited to pursuing and recovering the property. That concession does not reach this case. Although the statute says that the trustee, when appointed, takes title as of the day of adjudication, the Supreme Court has held that, for many purposes, this title relates back to the filing of the petition. Acme Co. v. Beekman Co., 222 U. S. 300, 32 Sup. Ct. 96, 56 L. Ed. 208; Everett v. Judson, 228 U. S. 474, 33 Sup. Ct. 568, 57

L. Ed. 927, 46 L. R. A. (N. S.) 154. And we have applied this rule. Toof v. City Nat. Bank, 206 Fed. 250, 124 C. C. A. 118.

By virtue of such relation, the trustee, on October 21st and 22d, had a title to these funds which was good as against Reitz and his agents and attorneys. Upon familiar principles, all who are bound to admit the trustee's title, and who actively participate in depriving him of his property, must respond for the damages, and nothing short of collection from one will bar proceedings against another. It is not controlling that counsel have not found, nor have we, precedents for recovery by a trustee under such facts as these. To hold that the trustee cannot sue for tortious injuries inflicted upon the estate property intermediate the petition and the adjudication is to say that during this period the estate may be destroyed with impunity. We think his right to bring such an action is clear.

[4, 5] 3. As to the particulars of the so-called conversion or diversion, the evidence is consistent with either one of two states of fact. It may be that, at various times before October 21st, Arnold had received this money and was holding it as attorney and agent for Reitz, and that on October 21st and 22d, or thereafter, he turned it over to Reitz by delivering these certificates; or it may be that the receipt by him of money from Reitz, the taking of certificates in Arnold's name, and the delivery of them to Reitz, were practically simultaneous, and part of one transaction. One or the other of these things must be true, if the verdict of the jury was right. Defendant insists that each theory, alike, is inconsistent with any right to recover; so they must be examined separately.

Defendant says that if Arnold had possession of Reitz's money, and held it only as attorney for Reitz, it was Arnold's duty to pay it over to Reitz upon demand, and that this duty was not terminated by the filing of the petition in bankruptcy; that this filing may create a lien, or rights in the nature of a lien, in favor of creditors, but it does not change the relations between the bankrupt and his attorney; that the bankrupt's title continues perfect as against his attorney, and the latter cannot refuse to recognize the title because it may eventually turn out to be subject to the claims of a third party. These contentions might be granted without affecting this case; and this is because of the effect of appointing a receiver. Reitz and Arnold cannot be heard to claim ignorance of such an appointment. They had consented thereto, they knew that the order had been made or would be made, and they were bound to know what the real fact was. This appointment vested in the receiver a possessory right superior to that of the bankrupt and all his agents, and it became the duty of Arnold to deliver this money to the receiver and not to Reitz. The title of the trustee by relation and the possessory right of the receiver merge, and we see no reason why, for the purposes of this action, the trustee's right is not the same as if the acts in question had been committed after his appointment.

If we turn to the other supposition of what may have occurred, we find it claimed that Arnold's action would have been that merely of a messenger for Reitz, who went to the bank and changed the form of securities as requested; that for Reitz to change his funds from

small bills to large bills, or from currency to certificates, was not a material change; and that, to aid him in so doing, even to the extent of taking a momentary title to certificates, was neither conversion, nor diversion, nor participating therein. In view of the relation of attorney and client, it is at least true that there would be nothing necessarily wrongful in such action by the attorney, and if there were nothing else, we might hesitate to affirm a judgment which had only such a foundation; but it appears that, a few days later, Arnold, as attorney for Reitz, made out the schedules in bankruptcy, and did not include these funds nor their proceeds in any form. If the assumption of fact which we are now considering—i. e., that Arnold took Reitz's money and obtained the certificates and gave them back to Reitz—is correct, this omission of them from the schedules was an active and a certain participation in the fraudulent diversion, and it would tend to characterize the previous taking of the certificates in Arnold's name as a thing done in order that there should be no record of them in the name of Reitz. Upon this theory, also, we must hold that there was evidence sufficient to support the submission.

[6] 4. The ultimate issue of fact is very simple. The plaintiff's theory we have stated. Arnold utterly denied having anything to do with Reitz in connection with these certificates. He testified that the money had been received by him (Arnold) from other sources; that it was to be turned over to one Howard, with whom Arnold had had long-standing business relations: that Arnold followed Howard's directions in obtaining the certificates and in taking them in his own name; that he indorsed them in blank and delivered them to Howard at Howard's request; and that he never suspected that Reitz had or would have anything to do with them until he learned, a few months later, they had been found in Reitz's possession. There was (perhaps) a family relationship between Howard and Mrs. Reitz, and only by the aid of that suggestion could Arnold imagine how the certificates reached Reitz. This dispute was submitted to the jury, as the determinative issue, by this language in the charge:

"These are the claims of the parties, respectively, and, by these claims are presented the important questions for you to determine, and those questions are these: Did the defendant purchase the five certificates of deposit, aggregating $7,000 from the banks in Chicago with funds which belonged to Mr. Reitz, or his estate in bankruptcy? And did this defendant, acting with Mr. Reitz, conceal such moneys and convert them to their use, or to the use of either of them, with the intent to hinder, delay, and defraud the creditors of Mr. Reitz? If you answer those questions in the affirmative, your verdict will be in favor of the plaintiff in this case. If you answer those questions, or either of them, in the negative, your verdict will be in favor of the defendant."

Arnold's story was considerably supported by documentary evidence and by testimony of others, and we are asked to say that a jury had no right wholly to reject it, and to find against him a verdict based solely on inferences drawn from circumstances. Howard was dead; two other witnesses who could have supported Arnold in vital particulars were dead; and Mr. and Mrs. Reitz were beyond the reach of the court, and neither testified. On one side was Arnold's testimony; on the other side were inferences from the conceded facts and improba-

bilities in his story. The whole issue was one of credibility; and this is peculiarly for the jury. Reading the record, and giving due weight to Arnold's good standing as a business man, an attorney, and a public officer, we might hesitate to say that the preponderance of evidence indicated that his whole testimony was a fabrication; but we certainly cannot say that a jury had no right to make this finding. It is unnecessary to consider details; the jury utterly disbelieved him; and the several suspicious facts tending to discredit him furnish sufficient legal support for the verdict.

[7] 5. Many assignments of error are directed to the admission of evidence. In a case where the sole issue is as to defendant's fraud, and where that issue depends upon his credibility as a witness, there must be a broad latitude in the admission of evidence. It is enough to say of these assignments that we have examined the record as to all of them, and do not find anything which calls for reversal. Only one needs special mention. A bank cashier was allowed to testify that Reitz, shortly before bankruptcy, in withdrawing funds from the bank, asked for currency, and was persuaded to accept a draft. This conversation was not in Arnold's presence, and it was claimed to be admissible as a declaration of one of two conspirators, made in furtherance of their object. We need not pass upon this ground of support. It appeared beyond question that about this time Reitz did turn a considerable amount of his assets into cash, and the jury had the right to draw from this fact any proper inference. That he asked for currency as a step in getting it, or that he asked in one instance where he did not get it, could not add enough to the existing basis for such inference to make the addition of substantial prejudice.

[8] 6. Defendant requested a series of special instructions bearing upon the inferences of fact which should be or should not be drawn from certain items of evidence. Most of them were to the effect that the condemnatory fraud of the defendant should not be inferred from this or that item of evidence introduced or specific conclusion reached by the jury, and most of them might well have been given; but it is largely within the discretion of the trial judge in this way to emphasize specific facts. It may be that each item of evidence may rightly be pronounced insufficient of itself to support a conclusion of fraud, and yet that conclusion may well rest upon the composite effect of all the evidence. Not one of the requests was necessary to be given, as presenting a distinct theory of defense, not covered by the general charge, as in Hendrey v. United States, 233 Fed. 5, —— C. C. A. ——. In the refusal of these requests, and in determining rather to submit the issue in the sharp and clear way shown by the above quotation from the charge, the trial court did not exceed its proper discretion.

There is also an assignment of error because the court refused to instruct the jury that fraud must be shown by clear and satisfactory proof, that honesty, not dishonesty, is presumed, and that the plaintiff's evidence must exclude the probability that the transaction was honest. Instructions of this general tenor have often been approved (Walker v. Collins [C. C. A. 8] 59 Fed. 70, 73, 8 C. C. A. 1); but we find no controlling or persuasive authority holding that

it is error not to give the jury this rule, unless such holding is in cases where circumstantial evidence was to be considered, and where the inference to be drawn therefrom was doubtful. Where the primary facts are not in dispute, the jury may well be warned against drawing a condemnatory inference from premises which will support also an exculpatory conclusion; but there is little, if any, reason for applying this rule where the issue is whether one or another set of primary facts is in accord with the truth. In the present case, if the Howard story was false, the inference that the certificates were bought with Reitz's money and turned over to him by Arnold would be most natural, and if it was true that Arnold bought the certificates with Reitz's money, took them in his own name, turned them over to the absconding bankrupt, omitted them from the schedules, and then tried to conceal the whole thing by his false testimony, the presumption of an intent to defraud creditors would be so violent as to be almost conclusive, and such a warning to the jury would not be worth while. Arnold does not claim that he supposed the money belonged to Mrs. Reitz, or thought that it became Reitz's after the petition was filed, or had no reason to think that Reitz would run away. The instructions would have been appropriate to some such situation; as the case was, the refusal was not error.

[9] 7. There remains the subject of interest. Defendant requested the court to instruct that no interest could be allowed, except after suit commenced, the request was refused, and defendant excepted and assigned error. The court directed the jury, if it found for plaintiff, to include interest at the legal rate in Michigan, from and after October 31, 1908. In this court the defendant has planted his whole argument on the theory that the action was one of trover, and, perhaps for this reason, has not argued the assignment of error relating to interest; since in an action of trover the allowance of interest, under one name or another, after conversion, and at least after demand, has been sometimes approved. We have found that, for the purposes of this review, the action should not be treated as one really standing on a conversion by Arnold to his own use, but rather as one for general damages for a tortious injury to property rights; and, under these circumstances, we think we should overlook such waiver of this assignment of error as would otherwise result from the fact that it was not argued.

[10] The general rule is clear that in an action for tort interest, as such, cannot be recovered of right. The allowance of what corresponds to interest is discretionary with the jury, and the extent of plaintiff's right in that respect is to have the jury consider the delay in reaching the verdict and judgment as one of the elements in determining the amount of damages to be stated by the verdict. "In cases of tort, its allowance as damages rests in the discretion of the jury." Justice Field, in Lincoln v. Claflin, 74 U. S. (7 Wall.) 132, 139, 19 L. Ed. 106. "Undoubtedly the rule, in cases of tort, is to leave the question of interest as damages to the discretion of the jury." Justice Shiras, in Eddy v. Lafayette, 163 U. S. 456, 467, 16 Sup. Ct. 1082, 41 L. Ed. 225. And see District of Columbia v. Robinson, 180 U. S.

92, 107, 21 Sup. Ct. 283, 45 L. Ed. 440, and Brent v. Thornton (C. C. A. 5) 106 Fed. 35, 38, 45 C. C. A. 214.

[11, 12] The damages were not so surely liquidated as to require interest by analogy to the rule which in some jurisdictions awards interest, upon the conversion of property. 8 R. C. L. p. 537. Prima facie, the damages were the face of the certificates; but they would have been reduced by anything which the trustee recovered in Canada before the trial or by anything which might have affected the face value of the certificates, and they might well have been increased by expenses or other losses suffered by the trustee, as the direct result of the diversion. That defendant was unable to prove anything in mitigation, and that plaintiff did not claim by his bill of particulars any damages in excess of the certificates, does not affect the original character of the damages. Nor is it certain that the jury, in its discretion, would have given damages to the same amount. The fact that no demand was made from Arnold before suit brought might have convinced the jury that such award would be unjust. White v. United States (C. C. A. 5) 202 Fed. 501, 502, 121 C. C. A. 33.

[13] Whatever view should be taken of interest after the suit was begun, the assignment of error does not reach that question, and we are confined to the earlier period. We must conclude that it was error to require the jury to include in the verdict the interest accruing before the date of suit, and for that reason the judgment must be reversed, unless the trustee remits this excess. If, before the mandate goes down, the trustee makes this remittitur in the court below, and files with the clerk here a certified copy thereof, the judgment so modified will be affirmed, but with costs to the plaintiff in error. Lacking such remittitur, the judgment will be reversed, and a new trial awarded.

---

⚮For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes