## EDDY *v.* LAFAYETTE.

ERROR TO THE CIRCUIT COURT OF APPEALS FOR THE EIGHTH CIRCUIT.

No. 180. Submitted March 9, 1896. — Decided May 25, 1896.

It appears by the affidavit of the agent of the plaintiffs in error that he was their agent when service of process was made upon him, and that their allegation that he was not then their agent was therefore untrue.

The second section of the act of March 3, 1887, c. 373, was intended to place receivers of railroads on the same plane with railroad companies, both as respects their liability to be sued for acts done while operating a railroad, and as respects the mode of service; and the service in the present case on an agent of the receivers was sufficient to bring them into court in a suit arising within the Indian Territory.

The terms of the summons were in accordance with the provisions of § 4868, Mansfield's Digest of Statutes of Arkansas, under which the summons was issued.

This action was brought by the defendants in error to recover the value of a large quantity of hay which it was alleged had been destroyed by a fire caused by sparks escaping from a locomotive through negligence, and falling on a quantity of dry grass and leaves that had been negligently allowed to accumulate on the railroad operated by the plaintiffs in error as receivers. The hay was cut from lands of the Creek nation under direction of Sallie M. Hailey, an Indian, one of the defendants in error, by Lafayette, a white man who was to receive an agreed part of the hay for cutting and curing it. *Held*

(1) That, in the absence of proof to the contrary it must be assumed

that Mrs. Hailey was entitled to cut hay upon the land which she occupied in common with other members of the Creek nation;

(2) That Lafayette, under his agreement with Mrs. Hailey and his performance of it, acquired an interest in the hay;

(3) That an instruction to the jury "that evidence of a railroad company allowing combustible materials to accumulate upon its track and right of way which is liable to take fire from sparks escaping from passing engines and communicate it to adjacent property, is sufficient to warrant the jury in imputing negligence to the company" was correct;

(4) That there was no error in the treatment given by the Circuit Court of Appeals to the several assignments respecting the trial court's instructions on the subject of the respective duties of the railroad company and of the plaintiffs.

The rule in cases of tort is to leave the question of interest as damages to the discretion of the jury; but as it is evident from the record that the jury did not allow interest, but based their verdict entirely upon the number of tons of hay destroyed at the market value per ton, this court acquiesces in the disposition made by the Circuit Court of Appeals of the question made in respect of the instruction of the trial court on the subject of interest.

THE complaint in this case was filed in the United States Court for the Indian Territory on March 17, 1890, and on the same day the clerk of that court issued the following summons:

"United States of America, }
    Indian Territory.         }
"The President of the United States of America to the marshal of the Indian Territory:

"You are commanded to summon George A. Eddy and H. C. Cross, receivers of the Missouri, Kansas and Texas Railway, a corporation, to answer, on the first day of the next April term of the United States Court for the Indian Territory, being the 7th day of April, A.D. 1890, a complaint filed against them in said court by Sallie M. Hailey and Ben. F. Lafayette, and warn them that upon their failure to answer the complaint will be taken for confessed; and you will make due return of the summons on the first day of the next April term of said court.

"Witness the honorable James M. Shackelford, judge of

said court, and the seal thereof, at Muscogee, Indian Territory, this 17th day of March, A.D. 1890.

"WM. NELSON, *Clerk.*"

The summons bears the following return:

"Received this summons at 2 P.M., March 17, 1890, and I certify to having served said summons by leaving a copy thereof with J. W. Williams, the agent of the within named defendants, at Muscogee, this 17th day of March, 1890.

"T. B. NEEDLES, *Marshal.*"

The complaint began as follows: "The plaintiff, Ben. F. Lafayette, white, and residing in the Indian Territory, and plaintiff, Sallie M. Hailey, an Indian, and residing in the Indian Territory, allege that defendants George A. Eddy and H. C. Cross, white men, were at the time hereinafter mentioned, and are now, the receivers of the Missouri, Kansas and Texas Railway, a duly incorporated railroad company doing business in the Indian Territory, and operating its railroad through the Indian Territory under and by virtue of the laws of the United States, and that said George A. Eddy and H. C. Cross were on the — day of — duly appointed as receivers of said railroad by the Circuit Court of the United States for the eighth judicial circuit." It proceeded to allege that the said railroad was located near the premises of the plaintiff, Sallie M. Hailey, in the Indian Territory; that the defendants had negligently permitted large quantities of dry grass and weeds to accumulate on the railroad right of way, which was 100 feet in width on either side of the track; that the defendants, on August 20, 1889, were operating and running over the road an engine, No. 63, which was not supplied with the best appliances for arresting sparks of fire, and that while using the engine upon the road near the premises of the plaintiff, Sallie M. Hailey, they negligently permitted it to cast sparks and coals of fire into the dry grass on the said right of way, thus starting a fire which spread over the land of the said plaintiff, and there destroyed large quantities of hay,

which she and the plaintiff, Ben. F. Lafayette, had jointly put up and cured, and in the proceeds of the sale of which the plaintiffs were in certain proportions to share. It was averred that the amount of the hay so destroyed was 666½ tons, of the value of $2666, for which sums the plaintiffs asked judgment.

On May 6, 1890, the defendants entered a special appearance in the case, stating that they appeared "specially and only for the purposes of this motion and for no other purpose," and moved the court to quash both the said summons and the said return, upon the grounds that the summons was improperly and illegally issued, did not show the nature of the complaint filed, and did not set forth a cause of action; that the return was untrue; that J. W. Williams, who was designated in the return as "the agent of the within named defendants," was not, on March 17, 1890, such agent; that J. W. Williams was not on that day such a person as could legally have been served with process against the said receivers; and that the return and service were made improperly. In support of this motion the defendants proved that they were receivers of the said Missouri, Kansas and Texas Railway, duly appointed as such by the Circuit Court of the United States for the District of Kansas, and by the Circuit Court of the United States for the Western District of Arkansas, prior to the institution of this suit; that as such they were engaged in operating the said railway previously to and at the time of the service of the summons upon J. W. Williams; and that J. W. Williams was, on March 17, 1890, station agent for the said receivers at Muscogee, Indian Territory. The defendants filed at the same time the affidavit of J. W. Williams, to the effect that since the month of June, 1887, he had been station agent for the said receivers, but that he had never been the agent of "the Missouri, Kansas and Texas Railway, a corporation," within the Indian Territory, and was not such agent on March 17, 1890.

The court having heard and considered the motion, overruled the same, to which action the defendants excepted. Afterwards, on May 19, 1890, they filed their answer; deny-

ing therein all the essential allegations of the complaint, but protesting that they had not been served with process, and asserting that the court had not acquired jurisdiction over them in the case.

A trial was duly had before the court and a jury. After all the evidence on the part of the plaintiffs had been introduced, the defendants moved to have the same stricken out for the reason that it did not show that the engine which caused the alleged damage was engine No. 63, as alleged in the complaint. The motion was overruled, and the court granted the plaintiffs leave to amend their complaint by striking out of the same the words and figures "No. 63." The defendants excepted, and then moved for a continuance of the case in order to give them time to meet the allegations of the complaint as amended. This motion also was overruled, to which action the defendants excepted.

At the close of all the testimony the defendants moved the court to direct the jury to return a verdict in their favor. The court overruled the motion, and the defendants excepted. They then requested the court to give the jury certain instructions, among which was the following:

"The court instructs the jury that if you find from the evidence in this case that the hay claimed by the plaintiffs to have been burned by sparks cast out from the fire of one of defendants' engines was cut from the public domain or open lands of the Creek nation, and not upon land owned or possessed by plaintiffs or either or both of them, and that said hay was so cut upon the said public domain or open lands of the Creek nation, without the consent of the said Creek nation or its officers or agents, then the plaintiffs cannot recover in this action."

The court refused to give this instruction, to which refusal the defendants excepted. Among the instructions which the court gave, and to the giving of which the defendants excepted, were the following:

"X. The court further instructs the jury that evidence of a railway company allowing combustible materials to accumulate upon its track and right of way which is liable to take

fire from sparks escaping from passing engines and communicate it to adjacent property, is sufficient to warrant the jury in imputing negligence to the company."

"XII. It is the duty of a railroad company to keep its right of way clear of combustible materials, and failure to do so is a circumstance showing negligence.

"XIII. The court further instructs the jury that if they shall find for the plaintiffs, then the measure of damages is the market value of the hay when burned, together with interest at six per cent per annum from the date of the destruction of the hay."

On June 27, 1891, the jury rendered a verdict for the plaintiffs for the sum of $2664, with interest thereon at six per cent, and on July 10, 1891, judgment was entered in favor of the plaintiffs in the said amount, with six per cent interest on the same from date until paid. The defendants took the case upon writ of error to the United States Court of Appeals for the Eighth Circuit, where, on February 15, 1892, the said judgment was affirmed, 4 U. S. App. 247. They then made a motion for a rehearing in that court, and the same having been denied, they sued out a writ of error bringing the case here.

*Mr. James Hagerman, Mr. Clifford L. Jackson* and *Mr. Joseph M. Bryson* for plaintiffs in error.

*Mr. William T. Hutchings* for defendants in error.

Mr. JUSTICE SHIRAS delivered the opinion of the court.

This was an action brought in the United States Court in the Indian Territory to recover for damages caused to the property of the plaintiffs by the negligent management of the railroad of the Missouri, Kansas and Texas Railway Company, a corporation created by the laws of the United States, and, at the time of the accident, in the control and management of George A. Eddy and Harrison C. Cross, receivers, who had been appointed such by the United States Circuit Court for the District of Kansas and by the United States Circuit Court for

the District of Arkansas. Both of those districts and the Indian Territory constitute a portion of the eighth judicial circuit of the United States, and the railroad in question traverses the States of Arkansas, Kansas and the Indian Territory.

The first question presented is whether the trial court acquired jurisdiction to try the case against Eddy and Cross, receivers of the Missouri, Kansas and Texas Railway, by virtue of the summons served on one Williams as agent of said receivers in charge of their station at Muskogee in the Indian Territory.

The return of the marshal was that he had served the summons by leaving a copy thereof with J. W. Williams, the agent of the defendants at Muskogee, on March 17, 1890.

On April 8, 1890, the defendants entered a special appearance by attorney, and moved to quash the return of the marshal, for four reasons : " First, because on the day alleged in said return as the day of the service of said summons, to wit, March 17, 1890, J. W. Williams, styled in the marshal's return on said writ of summons as the agent of the within named defendants, was not such agent; second, because said J. W. Williams, on the 17th day of March, 1890, was not such a person upon whom process against the said George A. Eddy and H. C. Cross, receivers of the Missouri, Kansas and Texas Railway, could legally have been served ; third, because said return is untrue ; fourth, because said service and said return were illegally and improperly made."

On May 6, 1890, the defendants, appearing specially, withdrew the motion theretofore filed by them to quash the return of the writ of summons, and, again appearing specially, and only for the purposes of a motion to quash writ of summons and return thereon, and, by leave of court, filed such motion, and in support thereof filed an affidavit of J. W. Williams and a certified copy of the order appointing receivers. The reasons filed in support of the second motion to quash were as follows: " First, because said writ of summons is improperly and illegally issued ; second, because the writ of summons in this cause does not show the nature of the complaint filed herein; third, because no cause of action is set forth in the

writ of summons issued herein; fourth, because said return on said writ is untrue; fifth, because said J. W. Williams, who is designated in said return as the agent of George A. Eddy and H. C. Cross, receivers of the Missouri, Kansas and Texas Railway, a corporation, was not on the day alleged in said return as the day of the service of said summons, to wit, said 17th day of March, 1890, such agent; sixth, because said J. W. Williams was not on said 17th day of March, 1890, such a person upon whom process against George A. Eddy and H. C. Cross, as receivers of the Missouri, Kansas and Texas Railway, could legally have been served; seventh, because said return and such service were illegally and improperly made."

The affidavit of J. W. Williams was to the effect that, at no time was he ever the agent of the Missouri, Kansas and Texas Railway, a corporation within the Indian Territory, but that since the month of June, 1887, he has been station agent for George A. Eddy and H. C. Cross, receivers of the Missouri, Kansas and Texas Railway Company, and has been such agent at said town of Muscogee in the Indian Territory.

It, therefore, appears by the affidavit of J. W. Williams that the allegation, in the reasons filed, that said Williams was *not* the agent of the said receivers, was untrue, and that Williams *was* their agent at the time and place named in the return.

So far, then, as the objection to the service and return of the summons depended on the allegation that Williams was not the agent of the receivers, it goes for naught, but the question remains whether he was such a person or agent on whom process against the receivers could be validly served.

In and by the act of Congress of May 2, 1890, c. 182, § 31, 26 Stat. 81, 94, it was provided that certain general laws of the State of Arkansas, in force at the close of the session of the general assembly of that State of 1883, as published in 1884 in the volume known as Mansfield's Digest of the Statutes of Arkansas, should be extended and put in force in the Indian Territory until Congress should otherwise provide; and among those laws, so extended, were those relating to

questions of practice and procedure; and it is alleged, in the opinion of the Circuit Court of Appeals in the present case, that it is conceded that under the laws of the State of Arkansas, which have been made applicable to the Indian Territory, such service as was had in the present case is sufficient to confer jurisdiction, when the defendant is a railway company or a foreign corporation.

The trial court and also the Circuit Court of Appeals were of opinion that the third section of the judiciary act of March 3, 1887, c. 373, § 2, 24 Stat. 552, 554, authorizing suits to be brought against receivers of railroads, without special leave of the court by which they were appointed, was intended to place receivers upon the same plane with railroad companies, both as respects their liability to be sued for acts done while operating a railroad and as respects the mode of service. We concur in that view, and in the conclusion reached, that the service in the present case, on an agent of the receivers, was sufficient to bring them into court in a suit arising within the Indian Territory.

This conclusion renders it unnecessary to consider the soundness of the further view of the Circuit Court of Appeals, that the receivers waived their objections to the service of the summons by pleading to the merits and going to trial, although having excepted to the rulings of the trial court sustaining the regularity of the service. Such is certainly not the general rule. The court below thought the rule in Arkansas is that mere defects in the service of process may be waived by appearance after a motion has been overruled to set aside the service in cases where the court has jurisdiction of the subject-matter of the controversy and the defect in the service only impairs the jurisdiction over the person of the defendant, citing several decisions of the Supreme Court of Arkansas to that effect. As already said, however, we do not deem it necessary for us to consider that ground of the decision upholding the validity of the service in the present case.

Another objection argued in the court below and in this to the summons was that it did not sufficiently set forth the nature of the complaint.

The Circuit Court and the Circuit Court of Appeals were of opinion that the terms of the summons were in accordance with the provisions of § 4868, Mansfield's Digest of Statutes of Arkansas, under which this summons was issued, and we see no reason why we should not agree with them.

Coming to the case on its merits we are met by the contention that the plaintiffs failed to show such title to the hay destroyed as entitled them to recover its value. The title to the land from which this hay was cut is in the Creek nation, and it is claimed that the nation alone is in possession of the land and entitled to maintain an action for trespass or injury to the same. The view taken of this contention by the Circuit Court of Appeals was that the record failed to show whether the hay was cut on the common pasturage of the nation or on lands at the time occupied and held by Mrs. Hailey individually, according to the customs and usages of the nation, and that court declined to presume that either of the plaintiffs was guilty of a trespass, much less that in cutting the hay either of them violated a criminal statute.

The latter observation, as to a violation of a criminal statute, was occasioned by the putting in evidence by the defendants of a statute of the Creek nation, as contained in the compilation of their laws of March 1, 1890, which was in force at the time the hay in question was cut and burned, and was in the following words:

"No non-citizen licensed trader, who has not intermarried with a citizen of this nation, shall be allowed to enclose more than two acres of our public domain, nor be allowed to cut and put up hay from our common pasturage, and any non-citizen, not intermarried, licensed trader found cutting and putting up hay from the common pasturage shall be fined ten dollars per acre for each acre so cut and put up."

And as it was shown that B. F. Lafayette, one of the plaintiffs, was a non-citizen licensed trader, not intermarried with a citizen of the nation, it was urged that he, as a trespasser, could not recover for the hay. But the evidence for the plaintiff tended to show that the hay in question was cut and put up for Mrs. Sarah M. Hailey, a citizen of the Creek

nation, who had contracted with Lafayette to cut and put up the hay, and that Lafayette was to have an interest in the proceeds of the hay, in consideration of his services.

There was no evidence tending to show that Mrs. Hailey, in procuring the hay in question to be cut and put up, was acting illegally or was in any wise a trespasser. And the statute above quoted implies that citizens of the nation might cut hay without limit from the common pasturage, as it forbids only non-citizen traders from cutting hay from the common pasturage; and we agree with the court below that there is nothing in the present record that would authorize us to say that the hay was gathered on the public domain without license. No law of the nation was shown forbidding Mrs. Hailey from cutting hay on land which she occupied in common with other members of the Creek nation.

The trial court charged the jury as follows : " The court further instructs the jury that evidence showing that the fire originated from sparks of a passing engine is *prima facie* proof of negligence, and the burden shifts on the railway company to show that it was guilty of no negligence," and it is assigned for error in this court that the Circuit Court of Appeals erred in not correcting this error. It is sufficient to say that no exception was taken to this part of the charge in the trial court, nor was it assigned for error in the Circuit Court of Appeals.

Exception was taken in the trial court to the following part of the charge : " The court further instructs the jury that evidence of a railroad company allowing combustible materials to accumulate upon its track and right of way which is liable to take fire from sparks escaping from passing engines and communicate it to adjacent property, is sufficient to warrant the jury in imputing negligence to the company ; " and that instruction was assigned for error in the Circuit Court of Appeals, whose refusal to hold the same to have been erroneous is complained of here.

We think that part of the charge was plainly correct, and no error was committed by the Circuit Court of Appeals in sustaining it. As we read the instructions given by the trial

court, the jury were not told that the action of the railway company in allowing combustible materials to accumulate upon its track and right of way, which was liable to take fire from sparks and communicate it to adjacent property, was negligence of itself, but was a fact from which, in the circumstances shown, the jury might infer negligence.

Nor do we find any error in the treatment given by the Circuit Court of Appeals to the several assignments respecting the trial court's instructions on the subject of the respective duties of the railroad company and of the plaintiffs.

The court instructed the jury that the measure of damages was the market value of the hay burned together with interest at six per cent per annum from the date of the destruction of the hay, and to this instruction exception was duly taken.

Undoubtedly the rule, in cases of tort, is to leave the question of interest as damages to the discretion of the jury. The Circuit Court of Appeals, while saying that the better, though not the invariable, practice is to leave the allowance of interest, in cases of tort, to the discretion of the jury, regarded it as quite evident from the record that, in point of fact, the jury did not allow interest, but based their verdict entirely upon the number of tons of hay destroyed at the market value per ton. Regarding the error, if such it was, as immaterial, the Circuit Court of Appeals declined to disturb the judgment of the trial court, and we acquiesce in that disposition of the question.

The judgment of the Circuit Court of Appeals is

*Affirmed.*