**Fannie D. Holt, Administratrix of Estate of J. Marshall Holt, Deceased, Appellee, v. Illinois Central Railroad Company, Appellant.**

Opinion filed March 2, 1943. Rehearing denied April 14, 1943.

CHARLES E. FEIRICH and JOHN K. FEIRICH, both of Carbondale, for appellant; VERNON W. FOSTER and CHARLES A. HELSELL, both of Chicago, of counsel.

FLETCHER LEWIS, of Murphysboro, for appellee.

MR. JUSTICE STONE delivered the opinion of the court.

This is a suit brought by appellee as administratrix of the estate of her husband to recover damages for his death, which occurred when the automobile which he was driving was struck by a train of appellant on a public road crossing in Vergennes, Illinois.

The complaint consists of one count and alleges negligence on the part of the defendant in the speed of the train and failure to give signals; it also alleges due care on the part of the deceased. The answer denies all the material averments of the complaint. The undisputed facts in the record show the following situation:

Vergennes is an incorporated village of approximately three hundred ten population. The train was a special and not a regular train. The railroad track of appellant runs in a general northerly and southerly direction through the town and is straight and approximately level for more than a mile north of the Hack avenue crossing where the collision occurred. The home of deceased was on Main street, which is east of and adjoins the railroad right of way and was approximately 200 feet from the track. He had lived there 5 years and in Vergennes 15 years. Harrison street runs north and south and adjoins the railroad right of way on the west. Hack avenue runs east and west and crosses Harrison street and the railroad track at right angles. Schimpf's service station is on the west side of Harrison street, 120 feet from the Hack avenue crossing. Between Schimpf's service station and the intersection of Hack avenue and Harrison street to the south there is the post office and Ray

Bastein's feed store. There is a sidewalk in front of Schimpf's service station which extends to the intersection of Hack avenue and Harrison street.

Appellant's railroad is on an embankment through the village which, at the Hack avenue crossing, is approximately 4 to 5 feet above the level of the intersection of Hack avenue and Harrison street. The Hack avenue crossing is 16 feet wide at the railroad, which is approximately the same width as the street. The depot building and platform is on the east side of the railroad track about 206 feet north of the crossing. There is only one main track, which is the westerly track and the first track reached by Holt. The two other tracks to the east are switch tracks.

From the west side of Harrison street to the railroad track for a distance of 840 feet north of the Hack avenue crossing there are no buildings, shrubbery, or any other obstructions to the view of any kind whatever. Virgil Holt, a son of deceased and who took the measurements for appellee, stated that at a point 16 to 23 feet from the track he could not see beyond the toolhouse 840 feet to the north, but that when he got within 6 feet of the track there was no obstruction to his view except some semaphore signals about 1500 feet north of the crossing, which were not a serious obstruction, and that when he got within 3 feet of the track he could see up the track a mile. He also testified that he had worked on the car involved in the collision that morning, and that at 10 miles an hour the brakes on that car would stop it within 2 feet.

Appellant's train approached from the north at a speed of 65 to 70 miles per hour. The weather was clear and cold, and the time was approximately 1:30 in the afternoon. The sun was shining.

Mr. Holt was in good health and was not affected in any way in health or physical condition. He was possessed of all his faculties, hearing, eyesight, etc. Mr. Holt left his home east of the railroad track about

1:15 p. m. and drove north and crossed the railroad track at the crossing north of Hack avenue. He proceeded south on Harrison street to Schimpf's service station to get some antifreeze. This service station was visible from his home across the tracks, and his son, who was at the home, saw him standing in front of the service station. He left the service station driving from 10 to 15 miles an hour, which speed did not change until the time of the impact. He did not change the course of his car other than to go around the car of Fern Williams, who had stopped and was waiting for the train to pass. He continued on up to the crossing and was struck.

Fern Williams, one of appellee's witnesses, was in her automobile on the west side of Harrison street in front of Ray Bastein's feed store, which is three doors south of Schimpf's service station. She saw Holt at the filling station having something put in his radiator. She planned to cross the railroad at Hack avenue, looked and saw the approaching train, and stopped her car just north of the intersection of Harrison street and Hack avenue to let the train pass. Holt left Schimpf's service station, drove south, passed by the stopped car of Mrs. Williams, and turned east on to the crossing. His speed was from 10 to 15 miles per hour and he neither increased nor decreased the speed.

At the time Holt passed Fern Williams in her car the train was in plain view of him, and was in plain view of anyone sitting in an automobile at that point. The train was higher than she was, the engine and car were big and were in plain view to her all of the time and that is the reason she stopped.

: As Holt made the turn to the east to cross the track, Reverend York, who was approaching on foot from the east in the center of the street, crossed the track on which the train was approaching and stopped approximately an arm's length west of the track and

waved both arms, holding a milk bottle in one hand,
and was yelling for Holt to stop. At the time York
stopped, the machine had not made the turn, but was
preparing to go around the corner and was about 40
feet from the track. At that time the locomotive was
about 500 feet up the track near the next crossing to
the north. The Holt car kept on coming at a speed
of between 10 and 15 miles an hour, which did not
change. York had to step off to the right to keep from
being run down by Holt's automobile. York was yell-
ing and made plenty of noise trying to stop Holt.

The only substantial dispute in the facts relates to
signals. Appellee offered the evidence of six wit-
nesses who did not hear the signals. Two of them
were in the house and heard the train approach. The
other four saw the train. Appellant, on this point,
offered the evidence of twelve witnesses who testified
that signals were given by the approaching train.
A number of these witnesses testified that the whistle
blew practically continuously for more than a quarter
of a mile prior to the time of the collision.

There is also some dispute as to whether, from a
point approximately 16 feet west of the crossing, the
vision to the north of the driver of an automobile is
unobstructed for more than 840 feet. Some of the
witnesses say that the section and tool house, which
are 15 feet from the west side of the track and 840
feet north of the Hack avenue crossing, constitute an
obstruction to the view of a train approaching from
the north, while some of the witnesses say that the
view to the north was unobstructed for more than a
mile.

At the close of appellee's evidence defendant moved
in writing for a directed verdict of not guilty and
tendered a written instruction. The motion was de-
nied and the instruction refused. At the close of all
the evidence in the case appellant again moved in
writing for a directed verdict of not guilty and tend-

ered a written instruction, the ruling on which was reserved by the court.

The jury returned a verdict finding appellant guilty and assessing appellee's damages at fifteen hundred dollars. Appellant filed a motion for judgment notwithstanding the verdict, which motion was overruled by the court, and at the same time the court also overruled the motion for a directed verdict, upon which the court had reserved ruling, and judgment was entered in favor of appellee and against appellant for fifteen hundred dollars and costs.

This appeal rests upon one proposition: Was plaintiff's intestate in the exercise of reasonable care for his own safety at the time he was killed? The appellant insists that the court erred in not taking the case from the jury and for not awarding the defendant judgment notwithstanding the verdict. Both, however, and the argument presented thereon, rest upon the one question.

We have examined this record with minute care and have traced plaintiff's intestate from the filling station where he bought gas that day, time and again, to the railroad crossing where he was killed. We have affirmatively looked for some act or acts, or even suggestions of acts of care of any kind on the part of the deceased. We can find none. When he left the filling station he passed the automobile of a woman who saw the train coming and who was waiting for it to get by. He turned east and drove the short distance between the corner of Harrison street and Hack avenue to the railroad at a rate of speed ranging from 10 to 15 miles an hour. As he approached the track within 10 feet or some major portion thereof, he could have seen the train coming a distance of 840 feet. As he approached the track and while the train was some 500 feet away, Reverend York was approaching in the direction of plaintiff's intestate from the east, near the center of the street. He crossed the track

on which the train was approaching and when he was about an arm's length west of the track he waved both arms at plaintiff's intestate and yelled for him to stop. At this time plaintiff's intestate was within less than 40 feet of the track. His car was in perfect working order and could have been stopped at the rate he was going, in a distance of 3 feet according to the testimony. Rather than being careful the deceased was apparently careless from the time he left the filling station, and there is nothing to be said in his favor on the question of using care.

Under this state of facts it seems almost useless to repeat what the courts of this state have consistently and conclusively held so often. In the case of *Adair v. Chicago & Alton R. Co.*, 299 Ill. App. 626 (Abst.) the writer of this opinion was the trial judge, and with great misgivings refused the peremptory instruction offered and the motion for judgment notwithstanding the verdict. The Appellate Court in that case brushed other questions aside, saying that the primary question was whether there was any proof in the record showing that the deceased was in the exercise of due care for his own safety. Briefly, the facts in that case are, that on November 10, 1936, early in the morning, while still dark, James Adair drove his truck in an easterly direction on North Grand avenue, in the city of Springfield, to the point where the tracks of the Alton intersect said street. Double tracks formed this intersection. Adair was driving east towards the tracks and would approach the south bound track first. A street light was on the north side of Grand avenue, 20 feet west of the south-bound railroad track. There is a fire engine house 55 feet west of the railroad tracks. The track nearest the engine house is the one on which the train was running. The front of the firehouse stands about 12 feet north of the north curb of the avenue. It was 35 feet wide, 70 feet long and 30 feet high. The east wall of the fire house is at right angles to the avenue, and not parallel to

the tracks. The testimony showed that from a point 60 feet west of the westernmost railroad rail, a truck driver going east on the avenue could plainly see evidence of a railroad, such as tower house, gates, signs. He also testified that such driver would have to be about 60 or 70 feet west from the south-bound track before he could get a clear view down the railroad for 200 or 300 feet, and that as you go further east on the avenue, the view broadens down the railroad to the northeast. Photographs were introduced showing slight obstructions, such as telephone poles, running along the west side of the right of way and a small "no trespassing sign" located on said right of way. In this situation the deceased drove his truck east on the south side of North Grand avenue, traveling at the rate of 8 miles an hour. He drove straight onto the track, was struck and killed. In view of these facts the court said, "It seems clear to us from the manifest weight of the evidence that appellee has failed to prove that the deceased was in the exercise of due care and caution for his own safety at the time of the accident. The burden of proof is always on the plaintiff in actions of this character to show that the deceased was in the exercise of due care at the time he was injured. *Stack v. East St. Louis Ry. Co.*, 245 Ill. 308. Proof by the appellee in this case that the deceased was in the exercise of ordinary care for his own safety is essential. *Greenstreet v. A. T. & S. F. Ry. Co.*, 234 Ill. App. 339." The evidence showed clearly that deceased, after passing the engine house had an almost unobstructed view down the track for 200 or 300 feet, and that after reaching a point at least 40 feet west of the tracks he had a clear view down the railroad tracks. The court then reiterated what has been so often stated, in substance, as follows: "It is generally recognized that railroad crossings are dangerous places, and one crossing the same must approach the track with the amount of care commensurate with the known danger; and when a

traveler on a public highway fails to use ordinary precaution while driving over a railroad crossing, the general knowledge and experience of mankind condemns such conduct as negligence."

Cases embodying the principle laid down in the *Adair* case might be multiplied. In *Sheehan v. Chicago N. S. & M. R. Co.*, 269 Ill. App. 477, where the court concluded that the driver was not in the exercise of ordinary care, the court said, "Ordinary care requires that one in approaching a railroad crossing must not only look and listen, but he must avail himself of every opportunity to do so, to see and hear, and he must see and hear that which the circumstances show was visible and audible to a person in the exercise of ordinary care." That principle is followed in *Chicago, B. & Q. R. Co. v. Mahara*, 47 Ill. App. 208. In the case of *Greenstreet v. Atchison, T. & S. F. Ry. Co., supra,* the plaintiff was riding in a motor car. He looked for the train more than 50 feet back from the track at a point where his view was obstructed. It appeared that if he had looked thereafter he could not have failed to see the train. The court said, "Proof by the plaintiff that he was in the exercise of ordinary care for his own safety is essential to his recovery and the only evidence of anything that the plaintiff did to avoid the injury is that he looked for a train more than fifty-five feet back of the track at a point where it is undisputed that his view was obstructed. There is no evidence of any kind to show that from the time he passed the obstructions until the collision he did anything to ascertain whether a train was approaching. If he had looked, he could not have failed to see the train."

In our view of this case, if plaintiff's intestate had looked at any reasonable distance from the time he passed Mrs. Williams' car, he could have seen this train. She saw it. Why did not he?

"The rule has long been settled in this state that it is the duty of persons about to cross a railroad track

to look about them and see if there is danger, and not to go recklessly upon the track but to take proper precaution to avoid accident. It is generally recognized that railroad crossings are dangerous places, and one crossing the same must approach the track with the amount of care commensurate with the known danger, and when a traveler on a public highway fails to use ordinary precaution while driving over a railroad crossing, the general knowledge and experience of mankind condemns such conduct as negligence. One who has an unobstructed view of an approaching train is not justified in closing his eyes or failing to look, or in crossing a railroad track in reliance upon the assumption that a bell will be rung or a whistle sounded. No one can assume that there will not be a violation of the law or negligence of others and then offer such assumption as an excuse for failure to exercise care. The law will not tolerate the absurdity of allowing a person to testify that he looked but did not see the train when the view was not obstructed, and where, if he had properly exercised his sight, he must have seen it. (*Greenwald v. B. & O. R. R. Co.*)" This case disposes of those cases which appellee claims hold that ''looking'' for a train is not essential. In those cases an examination will disclose some extraordinary circumstance such as raise a question of fact as to whether or not the driver of the car was not invited to cross the railroad. We know of no case, nor do we ever expect to hear of one from any court of this state, which holds that it is not necessary to look when you cross a known place of danger such as a railroad crossing anywhere, unless there is some particular circumstance which causes a reasonable person to feel secure without looking.

In the case of *Provenzano v. Illinois Cent. R. Co.*, 357 Ill. 192, where the view was approximately for the same distance as involved in the case at bar, the court held that the driver was guilty of contributory

negligence as a matter of law and held to the principle announced in the *Greenwald* case, *supra.*

It is useless to discuss whether plaintiff's intestate heard the signals which the evidence shows. It is apparent that if he had listened he would have heard and if he had looked he would have seen. It is unthinkable that anyone who is exercising reasonable care for his own safety can be close enough to a train to be struck by it and yet not hear or see it when there is nothing to detract from the hearing and nothing to detract from the ability to see.

Appellee argues that the intestate might have been confused. What is there to confuse one when another person is standing in front of your car waving you to stop at a railroad crossing? We fail to see. He also argues that a train was due from the south about that time; that would not relieve plaintiff's intestate of the duty of looking towards the north, or of taking warning. Neither would the fact that it was not a regular train, but was a special, relieve him of the responsibility of due care for his own safety. Our courts have said in strong enough language, and often enough, that a railroad is a known place of danger, and that it behooves every traveler upon the public highway to take note of that and use care commensurate therewith.

In our judgment it is useless to write more. This is just another of those all too numerous cases in which the plaintiff seeks recovery when his conduct is utterly void of those elements which make up the conduct of a reasonably prudent man.

There cannot be any recovery in this case, and the court erred in not giving the proferred instruction at the close of all the evidence, or in not rendering judgment in favor of the defendant *non obstante veredicto.* For such error the case is reversed. It is remanded to the trial court with instructions to enter judgment in favor of defendant notwithstanding the verdict.

*Reversed and remanded with instructions.*