## JACOBOWITZ v. THOMSON.
### No. 258.

Circuit Court of Appeals, Second Circuit.

March 7, 1944.

Benjamin H. Siff, of New York City (Nathan Cooper, of New York City, on the brief), for plaintiff-appellant.

James B. O'Shaughnessy, of Chicago, Ill. (John B. Doyle, of New York City, and Drennan J. Slater, of Chicago, Ill., on the brief), for defendant-appellee.

Before SWAN, CHASE, and CLARK, Circuit Judges.

CLARK, Circuit Judge.

This action was brought against the defendant, as trustee of the Chicago and North Western Railway Company, to recover damages for the wrongful death of plaintiff's intestate, Private Victor Jacobowitz, a member of the military police of the United States Army, who was struck and killed by one of defendant's trains while on duty guarding a railroad bridge across the Mississippi River between Illinois and Iowa. Plaintiff, the mother of the deceased, resides in Bronx County, New York, where the deceased also resided before his entry into the armed services. Defendant, a citizen and resident of Chicago, Illinois, was appointed trustee of the Railway by the District Court for the Northern District of Illinois, in reorganization proceedings commenced in 1935 under § 77 of the Bankruptcy Act, 11 U.S.C.A. § 205.

On May 29, 1942, the deceased and another military policeman, wearing full equipment, were assigned to guard the bridge in question. Having guarded the same bridge periodically over a period of three and one-half months, both were familiar with its construction. Their duties were not to remain in one place, but to walk their post in a military manner, keeping always on the alert and observing everything that took place. The bridge is some 300 feet long and 25 feet wide, having tracks for the passage of two trains. It runs in an east-west direction. On the north and south sides at each end there are planked walks approximately five feet in width which extend about 80 feet from the shore line to the superstructure of the bridge proper. No railings or guards of any kind stand between the edge of the walks and the river below. The bridge is what is called a "left-hand drive" bridge, with trains going west using the southerly tracks and trains going east using the northerly tracks. When a train passes on either track the overhang is such that only two feet, ten inches, of the boardwalks on that side remain clear. At about 8:15 P. M. daylight time on the day in question and while it was still daylight, a long eastbound freight train began to cross the bridge on the northerly tracks. The deceased, who had been on the northerly side of the bridge, crossed over on approach of the freight train, and then he and his companion stood on the southerly boardwalk about fifty feet from the easterly end of the bridge, facing north and watching the train for suspicious riders. While they were so standing, a passenger train approached on the southerly tracks, going west at about thirty-five miles per hour. From the place where the soldiers stood, there was an unobstructed view to the east of 1,187 feet. Nevertheless, they did not see or hear the approaching train until it struck them and threw them both into the river, killing the deceased and seriously injuring his companion.

The railway lines of the Chicago and North Western, a consolidated corporation organized under the laws of Wisconsin, Illinois, and Michigan, are located in nine middle western states and do not extend into the State of New York. But the defendant trustee maintains for the Railway a financial office in New York City, where interest is paid on securities of the Company, stocks and registered bonds are transferred, corporate records are kept, and notices to stockholders of the Company are sent out. This office is in charge of Harry W. Rush, the Railway's "fiscal representative," who has a staff of three assistants. Defendant also maintains in New York City an "off-line agency" for the solicitation of freight and passenger traffic and other incidental activities. That part of the work which relates to freight traffic is in charge of a "general agent" of the freight department, who has six assistants; that having to do with passenger traffic is in charge of a "general agent" of the passenger department, who has four assistants. At this office, a substantial volume of business is done selling tickets for passenger transportation on the Chicago and North Western, making reservations for Pullman accommodations, and arranging and booking freight shipments.

The summons and complaint in this action were served upon Rush in New York City. Defendant appeared specially to challenge the validity of this procedure, but the District Court upheld the service as upon a "managing agent" of a foreign corporation doing business within the state, as required by New York Civil Practice Act, § 229(3), made applicable by Federal Rule 4(d) (7), 28 U.S.C.A. following section 723c. Trial upon the merits was then had, in which the District Court reaffirmed jurisdiction over defendant, but directed a verdict for defendant at the close of plaintiff's case for lack of evidence of defendant's negligence and because deceased was guilty of contributory negligence as a matter of law. From the judgment dismissing the action on the merits plaintiff appeals, while defendant cross-appeals from so much of it as upholds jurisdiction over the defendant.

Since the accident occurred here at the easterly extremity of the bridge in Illinois, the substantive rights of the parties must be controlled by the law of that state. Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, 114 A.L.R. 1487; Palmer v. Hoffman, 318 U.S. 109, 117, 63 S.Ct. 477, 87 L.Ed. 645, 144 A.L.R. 719. Under Illinois law the plaintiff in an action for wrongful death must show affirmatively both that there was negligence on the part of the defendant which was the proximate cause of the death, Hartnett v. Boston Store, 265 Ill. 331, 106 N.E. 837, L.R.A.1915C, 460; Coleman v. C., B. & Q. R. Co., 287 Ill.App. 483, 5 N.E.2d 103, and that the deceased was free from contributory negligence. Holt v. Illinois Cent. R. Co., 318 Ill.App. 436, 48 N.E.2d 446; Illinois Cent. R. Co. v. Oswald, 338 Ill. 270, 170 N.E. 247; Carrell v. New York Cent. R. Co., 384 Ill. 599, 52 N.E.2d 201, affirming 317 Ill.App. 481, 47 N.E.2d 130. Moreover, under the law of that state, the court must grant a motion for a directed verdict "if, when all the evidence is considered, with all reasonable inferences to be drawn therefrom in its aspect most favorable to the party against whom the motion is directed, there is a total failure to prove one or more necessary elements of the case." Carrell v. New York Cent. R. Co., supra, 384 Ill. 599, 52 N.E.2d at page 203; Illinois Cent. R. Co. v. Oswald, supra.

Assuming what, indeed, is far from clear under the relevant authorities, that plaintiff's evidence presents an issue for the jury as to defendant's negligence, we think the deceased must be held guilty of contributory negligence as a matter of law under the Illinois decisions for failing to maintain a proper lookout for westbound trains. Deceased's companion testified that they had never before known of two trains to pass over the bridge at the same time. But the possibility was clearly present, and as reasonable and prudent men they should have kept a watchful eye towards the east. Had this been done there was ample time for them to reach a place of safety on the eastern shore. They were only fifty feet from shore, there was an unobstructed view of nearly a quarter of a mile in the direction from which the train approached, and it was travelling at thirty-five miles per hour, a speed which does not appear to have been unusual. There was nothing in the duties of the soldiers to call for inattention to their danger; in fact these should, if anything, have made them more alert. The Illinois decisions seem hardly doubtful that a defendant's verdict must be ordered. Thus, in the latest case, the two highest courts agreed in reversing a plaintiff's judgment and ordering judgment for defendant where a pedestrian had an unobstructed view for 705 feet as she approached a crossing of a train coming at 70 or 75 miles an hour, and the necessity of focusing her attention upon her footing owing to the broken, rough, and irregular condition of the walk leading up to the tracks and the sharpness and steepness of the incline did not excuse her negligence. Carrell v. New York Cent. R. Co., supra.

Defendant's basic point on his cross-appeal attacking jurisdiction is that he can be served and brought into court only as an individual natural person. And since admittedly he has not been personally served, he says that the only applicable statute, New York Civil Practice Act, § 229-b—a new provision for service on a nonresident natural person doing business in the state, passed in 1940 upon recommendation of the Law Revision Commission, Report, Recommendations and Studies, 1940, pp. 105-155—is in terms limited to an action arising out of such business, and does not justify service in a case such as this, citing Yeckes-Eichenbaum, Inc. v. McCarthy, 290 N.Y. 437, 444, 49 N.E.2d 517. But in Eddy v. Lafayette, 163 U.S. 456, 464, 16 S.Ct. 1082, 1085, 41 L.Ed. 225, the Court held that the intent of the statute authoriz-

ing suits against railroad and other federal receivers, Jud.Code, § 66, 28 U.S.C.A. § 125, was "to place receivers upon the same plane with railroad companies, both as respects their liability to be sued for acts done while operating a railroad, and as respects the mode of service." Hence it held service upon a station agent of the receivers valid as to them under a territorial statute making such service valid as to the road itself. This case has since been generally applied, as in Re Seaboard Air Line Ry., C.C.N.D.Fla., 166 F. 376; Jacobs v. Blair, 157 App.Div. 601, 142 N.Y.S. 897, and the lower court decision, 264 App.Div. 403, 35 N.Y.S.2d 527, which was reversed in Yeckes-Eichenbaum, Inc. v. McCarthy, supra. The rule was recognized in Gursky v. Blair, 218 N.Y. 41, 112 N.E. 431, L.R.A.1916F, 359, reargument denied 219 N.Y. 553, 114 N.E. 1068, although it was decided there, and even more extensively by Cardozo, C. J., in Gaboury v. Central Vermont Ry. Co., 250 N.Y. 233, 165 N.E. 275, that the agent must be agent of the receivers, and the mere fact that he had been an agent or an officer of the corporation was insufficient. We have held that 28 U.S.C.A. § 125 applies also to trustees in railroad reorganizations, Ziegler v. Pitney, 2 Cir., 139 F.2d 595, and cases cited, and see no reason why Eddy v. Lafayette, supra, is not the governing authority here. In consequence, service is proper when made upon "a managing or general agent" of the trustee, under Federal Rules of Civil Procedure, rule 4(d) (3), or upon "a managing agent" of the trustee within the state, under N.Y. Civil Practice Act, § 229(3), made applicable by Federal Rules of Civil Procedure, rule 4(d) (7).

■ It must be admitted, however, that Yeches-Eichenbaum, Inc., v. McCarthy, supra, 290 N.Y. at page 444, 49 N.E.2d at page 520, while not a clear-cut authority, does afford some support for defendant's position. In that case the Court of Appeals said that assuming that the trustees in reorganization of the Denver and Rio Grande Western Railroad Company "stood in the same position as the railroad company," yet the facts shown there were insufficient to indicate that the defendants were doing business in the state. Thus far it is in accord with the legal views we have stated; and the facts here present amply distinguish the case from that before the Court of Appeals. But then the court

went on to discuss § 229-b, apparently because, as it had already stated, service had been attempted under authority of that section. Naturally it concluded that service under that section was not effected, because the action did not arise out of the carrying on of business in the state. If this holding reflects more than appears on the surface and is intended to mean that service as though the trustee were a natural person, rather than service as upon a foreign corporation, is the governing requirement, then with deference we must disagree. For this would leave nothing remaining of Eddy v. Lafayette, supra, that service must be on the same plane as service on the company itself would have been. Since the question is one not of state, but of federal, law, Southern Pac. Co. v. Denton, 146 U.S. 202, 209, 13 S.Ct. 44, 36 L.Ed. 942; Neirbo Co. v. Bethlehem Shipbuilding Corp., 308 U.S. 165, 175, 60 S.Ct. 153, 84 L.Ed. 167, 128 A.L.R. 1437, we must follow the Eddy case, whatever may have been the intent of the state decision.

■ If, then, we apply the rule of service upon a foreign corporation, we must find the two requirements of service upon a proper agent and the "presence," i.e., the doing of business, of the corporation or the trustee in the district. But these matters have been passed upon so often in similar cases that we can add little to the precedents. Thus, with respect to the second requirement, there has been considerable litigation as to whether soliciting business within a state is sufficient presence; but as Judge Learned Hand points out in his vigorous opinion in Hutchinson v. Chase & Gilbert, 2 Cir., 45 F.2d 139, 141, the negative answer of cases such as Green v. C., B. & Q. R. R. Co., 205 U.S. 530, 27 S.Ct. 595, 51 L.Ed. 916, "perhaps becomes somewhat doubtful in the light of International Harvester Co. v. Kentucky, 234 U.S. 579, 34 S.Ct. 944, 58 L.Ed. 1479, and, if it still remains true, it readily yields to slight additions." And he continues that in Tauza v. Susquehanna Coal Co., 220 N.Y. 259, 115 N.E. 915, "there was no more, but the business was continuous and substantial." As all the cases point out, decision is to be reached empirically on the particular facts; and here there is certainly no reason to overturn the findings of the district judges. For defendant's freight and passenger traffic agency itself does considerably more than merely solicit business, since it actually sells trans-

portation service, arranging tickets, reservations, and freight shipments. In addition, defendant maintains a fiscal office for the payment of interest, transfer of securities, sending of stockholders' notices, and keeping of corporate business. Thus, we have much more than the "slight additions" referred to by Judge Hand. See, also, St. Louis S. W. R. Co. of Texas v. Alexander, 227 U.S. 218, 33 S.Ct. 245, 57 L.Ed. 486, Ann.Cas.1915B, 77; Canadian Pac. Ry. Co. v. Sullivan, 1 Cir., 126 F.2d 433, 437–440, certiorari denied 316 U.S. 696, 62 S.Ct. 1291, 86 L.Ed. 1766; Schumann v. National Pressure Cooker Co., 256 App.Div. 1044, 10 N.Y.S.2d 743; Meinhard, Greeff & Co. v. Higginbotham-Bailey-Logan Co., 262 App.Div. 122, 28 N.Y.S.2d 483; 1 Moore's Federal Practice 315-323.

So also service upon the fiscal agent, Rush, was sufficient. Whether we consider him a "general agent" under the federal rule or a "managing agent" under the state law is unimportant (though the latter does appear the more stringent requirement, Swarts v. Christie Grain & Stock Co., C.C.W.D.Mo., 166 F. 338, 342), since service valid under either rule is adequate, cf. Cohen v. American Window Glass Co., 2 Cir., 126 F.2d 111. Here Rush was not only defendant's fiscal agent in New York, but was also treasurer and director of the Railway, the sixth ranking official of the road, as it is said. While these positions of themselves may not justify the service under the Gaboury case, supra, there is no question of his importance in the railroad organization, or that his duties are more extensive, requiring more judgment and discretion, than those of various other railroad agents where service has been held adequate under both state and federal law. Re Hohorst, 150 U.S. 653, 14 S.Ct. 221, 37 L.Ed. 1211; New York, L. E. & W. R. Co. v. Estill, 147 U.S. 591, 13 S.Ct. 444, 37 L.Ed. 292; St. Louis S. W. R. Co. of Texas v. Alexander, supra; United States Merchants' & Shippers' Ins. Co. v. Elder Dempster & Co., 2 Cir., 62 F.2d 59; Mas v. Orange-Crush Co., 4 Cir., 99 F.2d 675, 678; Canadian Pac. Ry. Co. v. Sullivan, supra; Denver & R. G. R. Co. v. Roller, 9 Cir., 100 F. 738, 49 L.R.A. 77; Tuchband v. Chicago & A. R. Co., 115 N.Y. 437, 440, 22 N.E. 360; Schumann v. National Pressure Cooker Co., supra; Meinhard, Greeff & Co. v. Higginbotham-Bailey-Logan Co., supra.

On both appeals, the judgment is affirmed.