## KILPATRICK v. TEXAS & P. RY. CO.

### PARKER v. SAME.

Civ. Nos. 39-341, 39-349.

District Court, S. D. New York.
July 16, 1947.

636

Gerald F. Finley and Arnold B. Elkind, both of New York City (Arnold B. Elkind, of New York City, of counsel), for plaintiffs.

Davis, Polk, Wardwell, Sunderland & Kiendl, of New York City, appearing specially for the purposes of these motions only (William H. Timbers and Cleveland C. Cory, both of New York City, of counsel), for defendant.

CAFFEY, District Judge.

The matter now comes up on the motions by defendant to dismiss these two actions and the motions by plaintiffs to take depositions, which were not disposed of by my previous opinion. D.C., 72 F.Supp. 632. Defendant has submitted the affidavits and briefs which I then directed should be submitted. Defendant has also filed a formal notice of the withdrawal of that branch of its motions based upon service of process upon an allegedly improper person. Plaintiffs have submitted no new affidavits on briefs, relying upon the affidavits and briefs submitted upon the original argument of the motions. The only question to be decided upon defendant's motions to dismiss, therefore, is whether or not defendant was doing business in this district in December, 1946, when these actions were instituted.

In Barnett v. Texas & Pacific Railway Co., 2 Cir., 145 F.2d 800, decided on November 29, 1944, the court held that, on the facts then before it, defendant was doing business in this district in 1944. That decision was based on the facts that, in addition to the solicitation of freight and passenger business in New York, defendant also sold tickets for transportation on its line, issued bills of lading and handled complaints here. These additional activities were held to be more than the "slight additions" referred to in its earlier opinions in Hutchinson v. Chase & Gilbert, 2 Cir., 45 F.2d 139, 141, and Jacobowitz v. Thomson, 2 Cir., 141 F.2d 72, 75, 76.

It appears from the affidavit of Cooper Hunt, defendant's Eastern Traffic Manager, that, shortly after this decision, he was informed by defendant's general attorney in Dallas, Texas, that its officers were considering curtailing the authority of defendant's office in New York for the express purpose of causing defendant to conduct its business in New York thereafter in such a manner as not to be amenable to service of process here; that on March 9, 1945, he was informed over the telephone by defendant's Assistant Traffic Manager in Dallas that the authority of the New York office to issue original bills of lading for shipments originating on defendant's lines had been terminated; that on the same day he was also informed in like manner by defendant's General Passenger Agent in Dallas that defendant's New York office was no longer authorized to engage in the sale of tickets for transportation on its lines and was requested to return to Dallas the stock of tickets on hand and the ticket stamper; that these were immediately sent to Dallas; and that since March 9, 1945, no passenger tickets of any kind and no original bills of lading have been issued from defendant's New York office.

Hunt also swears that no employee of defendant in New York has authority to approve, adjust or negotiate the settlement of any claim against defendant by a shipper, or a passenger, or any other person and that all negotiations and decisions as to the terms of settlement of claims are made by defendant's officers in Texas and all checks in settlement of claims are issued by defendant in Texas.

It also appears from his affidavit that defendant operates a railroad in the States of Texas, Louisiana and Arkansas only; that its principal office and its claim department are located in Dallas, where its principal business operations are carried on, its books and records are kept, its stockholders and directors' meetings are held, and its corporate and fiscal business, such as mailing checks, paying bills, purchasing equipment, etc., is carried on; and

that its bank account is maintained in Dallas.

It also appears that defendant maintains a single office, consisting of two rooms, at 233 Broadway, New York City, where eight persons are employed, the lease for which was executed by an officer of defendant in Dallas, no one in New York being authorized to execute; that the office is listed in the Manhattan telephone directory and has on its door "The Texas and Pacific Railway Company, Freight & Passenger Dept"; that the expenses of the office, including the salaries of the employees, are paid by check from Dallas; that this office has nothing to do with stockholders' notices, dividend checks or stock transfers; that no employee in New York is authorized to make contracts of any kind on defendant's behalf and none are made here; that the sole purpose of maintaining the office is the solicitation of passenger and freight business over defendant's lines which, when successfully solicited, is actually sold by the railroad over which the passenger or freight trip is scheduled to commence, i. e. the initial carrier, all payments thereafter being made to the initial carrier.

Defendant has also submitted affidavits by each of the other seven employees in defendant's New York office as to the nature of their duties and activities. One is a stenographer, another a clerk. The duties and activities of the other five are confined to the solicitation of passenger and freight business. Their affidavits add nothing of substance to the affidavit of Hunt, except the affidavit of H. J. Higgins, defendant's Eastern Passenger Agent. He says that, if prospective passengers so desire, he facilitates the procurement for them of through tickets to any point on or beyond defendant's lines, and that, in such instances, the initial carrier issues the whole ticket, a part of which covers transportation over defendant's lines.

There is also another affidavit of Hunt as to the functions of the Consolidated Railroad Ticket Office at 3 West 47th Street, New York City. He says that that office is maintained jointly by several metropolitan railroads, such as the Pennsylvania Railroad; that each railroad has there its own space and its own agent; that defendant has no space or employee there; that the agents of the railroads having space there sell through passenger transportation to any point in the country, the initial carrier issuing the whole ticket; that one coupon of such a ticket providing, for example, for transportation over the Pennsylvania Railroad to St. Louis and thence to El Paso on defendant's lines, would cover transportation on defendant's lines from Texarkana to El Paso; that such a ticket is not issued by defendant nor is any money turned over to defendant in New York as the result of such a sale; that such sales are reported by the particular railroad selling such a ticket containing such a coupon to its auditing office; that at the end of each month the aggregate sales by that railroad of tickets containing coupons for transportation over defendant's lines is compared with the aggregate sales by defendant of tickets containing coupons for transportation over that railroad's lines and a debit or credit balance struck; and that the actual transfer of funds in settlement of such balances is handled through the general accounting offices of the two railroads, nothing whatever being done by defendant in New York City with reference to these matters.

Defendant has also submitted affidavits of officials of J. P. Morgan & Co., Incorporated, Chemical Bank Trust Company, Bankers Trust Company and New York Trust Company, all in New York City, as to what fiscal activities of defendant are carried on through them, from which it appears that they are only the registrars or trustees of defendant's bonds or equipment trust certificates, interest disbursing agents thereof, stock transfer agents, or dividend disbursing agents on defendant's stock.

Defendant has never consented to be sued in New York, nor has it designated an agent in New York to receive process, nor has it applied for, or received, from the Secretary of State of New York a license to do business here.

None of these facts are controverted by plaintiffs. It is clear that they require that defendant's motions to dismiss should be granted, for they show that defendant is not now doing business within

this district. It does not follow from the fact that in the Barnett case it was held to be doing business here in 1944 that it was also doing business here in December, 1946, for it is the facts, as they existed at the time of service, that determine the question. Jacobowitz v. Thomson, supra, at end of right column, 141 F.2d at page 75. That a corporation, once held to have been doing business in a state by reason of certain activities conducted therein, may thereafter give up those activities cannot be denied. See Fowble v. Chesapeake & Ohio Ry. Co., D.C.S.D.N.Y., 16 F.2d 504, 505, 506. And it is immaterial that the activities were abandoned with the deliberate purpose of so conducting its affairs thereafter that it could no longer be held to be doing business in the State.

The foregoing facts indicate clearly that the only business conducted by defendant in this district in December, 1946, was the solicitation of freight and passenger business. Unaccompanied by other activities, this has been held in a number of cases not to constitute such doing of business by a foreign corporation as to subject it to service of process in a State other than of its incorporation. It will be enough to refer to the leading case of Green v. Chicago, B. & Q. R. Co., 205 U.S. 530, 533, 534, 27 S.Ct. 595, 51 L.Ed. 916, which has been referred to with approval by the Supreme Court in a number of subsequent cases and has never been overruled, either expressly or impliedly, although the court in International Harvester Co. of America v. Commonwealth of Kentucky, 234 U.S. 579, 586, 34 S.Ct. 944, 946, 58 L.Ed. 1479, did say that it was an "extreme case" but also that it had "no desire to depart from that decision".

The fiscal activities of the banks and trust companies in this district which act as registrars, transfer agents or disbursing agents for defendant's securities does not constitute the doing of business by defendant here. It was so held in Toledo Railways & Light Co. v. Hill, 244 U.S. 49, 52, 53, 37 S.Ct. 591, 61 L.Ed. 982. See also Fowble v. Chesapeake & Ohio Ry. Co., supra, at end of page 505 in 16 F.2d and Trizna v. New·York, C. & St. L. R. Co., D.C.S.D.N.Y., 57 F.Supp. 484, 485.

Neither does the sale here by another railroad of a passenger ticket containing a coupon providing for transportation over defendant's lines require a finding that the defendant itself is doing business here. See Philadelphia & Reading R. R. Co. v. McKibbin, 243 U.S. 264, 266–268, 37 S.Ct. 280, 61 L.Ed. 710; Maxfield v. Canadian Pacific Ry. Co., 8 Cir., 70 F.2d 982, and Murray v. Great Northern Ry. Co., D.C. E.D. Penn., 67 F.Supp. 944.

As I have concluded that defendant is not now doing business in this district, it is not necessary to consider another question raised by its counsel, viz., that to entertain jurisdiction over these actions would constitute an undue burden on interstate commerce because of the very considerable interference with defendant's railroad operations which would be caused by bringing its employee witnesses here, all of whom reside in Texas and who are said to number about 13 in each case, and the very considerable expense to it caused thereby.

Plaintiffs have also moved to take the depositions of each of the eight employees of defendant in its New York office, of a representative of each of the four banks and trust companies which service its securities, and of a representative of the Consolidated Railroad Ticket Office, on the sole question of defendant's corporate activities in this district, to be used in connection with defendant's motions to dismiss the two actions. Such a motion should be granted where pertinent facts bearing on the questions of jurisdiction are controverted (Watters v. Ralston Coal Co., D.C. M.D.Penn., 25 F.Supp. 387, 388), or where a more satisfactory showing of the facts is necessary. Jiffy Lubricator Co. v. Alemite Co., D.C.D.N.Dak., 28 F.Supp. 385, 386. But it is within the sound discretion of the court as to whether such depositions should be taken and the court may decide the question of jurisdiction upon affidavits alone. Urquhart v. American-La France Foamite Corporation, 79 U.S.App.D.C., 219, 144 F. 2d 542, 544.

Here defendant has submitted affidavit of each of its employees as to their duties, of a representative of each of the banks and trust companies as to defend-

ant's fiscal activities carried on through them, and of Hunt as to the functions of the Consolidated Railroad Ticket Office. They are specific and not general in their language. Each says that he could add nothing, if he should be called upon to give a deposition. None of the facts in these affidavits and none of the other facts above outlined are controverted by plaintiffs. I cannot see how the depositions, if taken, would help the cases of plaintiffs.

Defendant's motion to dismiss these two actions are granted upon the ground that defendant was not doing business in this district at the times when the actions were instituted and plaintiffs' motions to take depositions are denied.

Settle order on two days' notice not later than July 21st.